## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **LEROY THOMPSON,** | ) | **CASE NO. 1:18 CV 1777** |
|  | ) |  |
| **Plaintiff,** | ) |  |
|  | ) |  |
| **vs.** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
|  | ) | **MAGISTRATE JUDGE DAVID A. RUIZ** |
| **SECRETARY OF THE UNITED** | ) |  |
| **STATES DEPT. OF VETERANS** | ) |  |
| **AFFAIRS,** | ) |  |
|  | ) | **SECOND AMENDED COMPLAINT** |
| **Defendant.** | ) |  |

## NATURE OF THE ACTION

1.      This Second  Amended Complaint is an action arising out of adverse employment actions that are unlawful and retaliatory under federal law and which entitles Plaintiff Leroy Thompson to relief.

2.      This is an action instituted, *inter alia,* under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1, *et seq*., as amended,  the Civil Rights Act of 1871, federally protected rights against unlawful employment practices on the basis of race  discrimination, disability discrimination, hostile work environment discrimination, unlawful retaliation. This action is also instituted pursuant to 42 U.S.C. § 2000e-16 c, and the EEOC regulations that state federal sector employees seeking relief under Title VII and other federal laws may file a civil action in federal district court "[a]fter 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken." 29 C.F.R. § 1614.407(b).

3.       Defendant United States Department of Veterans Affairs ("VA") violated Title VII by unlawfully discriminating and retaliating against its employee Plaintiff Leroy Thompson ("Thompson").

4.       Thompson brings claims directly against the VA for its retaliation and discrimination against Thompson in violation of Title VII during the actionable period, and seeks equitable relief, actual damages, and attorneys' fees and costs for those violations.

## JURISDICTION AND VENUE

5.       Jurisdiction of this Court is founded pursuant to 42 U.S.C. §§ 2000e-1, *et seq* and 29 U.S.C. § 621,*et seq*. and other federal laws.

6.       Jurisdiction of this Court is also founded pursuant to 42 U.S.C. § 2000e-16, and the EEOC regulations that state federal employees seeking relief under Title VII and other federal laws may file a civil action in federal district court "[after 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken." 29 C.F.R. § 1614.407(b); see also, *Stewart v, Iancu*, 912 F.3d 693, 698-702 (4th Cir. 2019).

7.       Venue lies in this Court pursuant to 28 U.S.C. §§ 1331, 1337, 1346 and/or 1391 since the employment practices alleged to be unlawful were committed by defendants within the Northern District of Ohio, Eastern Division, and it is a claim against an agency of the United States.

8.       All required conditions precedent required under Title VII (42 U.S.C. §§ 2000e-1, *et seq*.) have been exhausted and/or performed by Thompson prior to the filing of this complaint.

## PARTIES

9.      Plaintiff, Leroy Thompson, is an adult African-American male, a citizen of the United States and a bon fide resident of the state of Ohio. At all times further relevant herein, Thompson was an Information Technology Specialist, GS-9, in the Office of Information and Technology ("OI&T") and was an employee of the United States Department of Veterans Affairs in Cleveland, Ohio.

10.      Defendant, the United States Department of Veterans Affairs, is a duly authorized and organized agency of the United States of America with its headquarters in Washington, D.C. The Department of Veterans Affairs is subject to the prohibitions against discrimination, retaliation and the creation and maintenance of a hostile environment pursuant to Title VII.

## STATEMENT OF THE CASE

11.      Since April 8, 2014 when Thompson initially sought EEO counseling and subsequently filing a formal complaint on May 14, 2014, to the present, Thompson alleges that as a result of him being African American, over the age of forty (40) or because he engaged in EEO protected activities under VA policy and the law.

12.      Since 2014, Thompson has been illegally retaliated harassed, subjected to a pattern of harassment and disparate treatment, and knowingly subjected to unjustified adverse employment actions, such as heightened scrutiny, constant monitoring, increased workplace surveillance, admonishments, written reprimands, counseling, suspensions, and false accusations of violations of VA policy.

13.     The rapid series of contrived disciplinary actions and/or adverse employment actions were designed to improperly manufacture a basis for heightened disciplinary penalties, and thereby support an eventual recommendation of suspensions without pay, denial of leave without pay for his disability or illness, and other retaliatory actions and harassment against Thompson from the VA by through its management officials.

14.     On or about April 8, 2014, Thompson sought EEO counseling and subsequently filed a formal complaint on May 19, 2014, alleging discrimination and hostile work environment by Steven Gaj ("Gaj") and Daniel Bennett ("Bennett"), a supervisory IT specialist and Thompson's immediate supervisor on the basis of his religion and age. (Dept. of Veterans Affairs Office of  Employment Discrimination Office of Agency Case No. 200H-0005-2014102480 included Thompson's claims for race, age and religious discrimination and a claim for retaliation or reprisal for prior formal EEO activity ).

15.     Since May 19, 2014, Thompson has sought EEO Counseling on numerous occasions, and filed at less than four (4) formal EEO complaints with the VA for discriminatory, harassing and retaliating conduct by VA management officials.

16.     Thompson has filed formal EEO complaints with the VA  in 2014, 2015 and 2018, and he has been engaged in active and ongoing EEO protected activity since 2014.

17.     Thompson has exhausted all administrative remedies in the EEOC federal sector system as it has been more than 180 days since the initial filing of two of Thompson's EEO complaints (EEO No. 2015103805 – race discrimination, hostile work environment and retaliation; EEO No. 2018102350 – hostile work environment, retaliation and disability

-4-

discrimination[1]), and Thompson had received formal written notification from that these matters have been exhausted or terminated by the EEOC.

18.     All of  Thompson's four (4) EEO complaints since May 2014 have named Gaj as the primary responsible managing official at the VA that engaged in unlawful and unfair discriminatory conduct and incessant retaliatory and harassing actions against Thompson in an effort to either deter or dissuade Thompson from engaging in lawful protected activity.

## GENERAL FACTUAL ALLEGATIONS

19.     Thompson is an IT Specialist in the OI&T Department at the Louis Stokes VA Medical Center in Cleveland Ohio. Thompson was hired on May 30, 2004 in OI&T, and Thompson, at all times relevant hereto, was a qualified federal employee with a disability who could remain qualified when all reasonable accommodations were granted and implemented in a timely manner.

20.     Before Thompson was under the supervision of Gaj in OI&T, he has worked for the Federal Government for over 36 years without any significant record of disciplinary actions or adverse employment actions. A working man, Thompson, was promoted to an IT position only after filing an action of discrimination.

21.     Following the filing of his initial internal EEO complaint in 2014 to the present, Thompson has been subjected to increasing unwarranted disciplinary actions that have resulted in adverse employment actions, including written admonishments; suspensions; frequent written

---

[1]     This Court's recent Memorandum and Order specifically held that Thompson "may also include claims based on exhausted EEO Complaint No. 200h-005-2018102350, filed May 15, 2018 (R.16-6, Page ID #: 179-180, i.e., hostile work environment, based on retaliation, and disability discrimination." (R.30).

reprimands for allegedly breaking selectively enforced policies; harsher discipline than similarly situated peers; increased workplace surveillance than other peers; more daily supervisory reporting and monitoring than other peers; unchecked retaliatory harassment; intimidation; denied of training opportunities and work privileges; less job and promotional opportunities than similarly situated peers; denial of a reasonable workplace accommodation for known disability; denial of advanced sick leave under VA policy; personal attacks; personal insults from management in front of peers; lost of pay; and, other VA benefits.

22.      Following the filing of his initial EEO complaint and subsequent protected activity, Thompson sought reassignment and additional training in order to be able to excel like his younger and non-black peers in OI&T. Thompson also sought professional development, but all of his requests for reassignment and/transfer have been denied by management.

23.      Between June 3, 2015 and August 19, 2015, Gaj and Bennett issued multiple admonishments and written reprimands for alleged incidents between April 14, 2015 and June 24, 2015. Each of these actions were unwarranted, baseless, and only meant to try to deter and/or dissuade Thompson from his continued engagement in EEO protected activity under VA policy and the law.

24.      After timely contacting an EEO counselor on June 9, 2015, Thompson filed a formal complaint on July 18, 2015, alleging discrimination, hostile work environment and unlawful retaliation.

25.      That initial EEO complaint was accepted for investigation on September 14, 2015, and Joseph M. DiBisceglie ("DiBisceglie"), EEO Investigator for the VA, was assigned to conduct the investigative inquires regarding Thompson's EEO complaint.

26.     On December 22, 2015, DiBisceglie contacted Bennett by email and requested Bennett's responses to a "Written Affidavit Investigation" document. (See, Email from DiBisceglie to Bennett, dated December 22, 2015, attached as, **"Exhibit A"** from Plaintiff's First Amended Complaint).

27.     During that investigation, Bennett[2], who left his IT supervisory position at the VA in or about October 2015, submitted a signed affidavit on December 23, 2015. (See, Written Affidavit of Daniel Bennett in the Matter of the EEO Complaint of Discrimination, Case No. 103805, attached as **"Exhibit B"** from Plaintiff's First Amended Complaint).

28.     In that Affidavit, in direct contravention to VA policy, Bennett swore that he was coerced, ordered and threatened into improperly issuing reports of contact, admonitions and other disciplinary actions against Thompson by Gaj regardless of whether Bennett, after investigating the alleged matters in question, believed that the reports of contact and disciplinary actions were warranted. (See, **"Exhibit B,"** at pp. 4-5).

29.     In that Affidavit, when Bennett was asked what VA policy or procedure was used to determine whether it was acceptable to issue Thompson unwarranted reports of contacts or discipline, Bennett stated: "None to my knowledge. I asked Steven Gaj to help produce justifications or policies or help to begin authoring policies should there be something [egregious] happening. I was given no such policies and again, ordered to issue the reports of conduct..." to Thompson. (See, **"Exhibit B,"** at p. 5).

_____

[2]     Apparently, Bennett purposely took a job demotion and transfer at the VA in order to remove himself from the hostile work environment created and operated by Gaj in OI&T. (See, **"Exhibit B,"** at p. 6). Bennett's Affidavit allegations and claims have never been investigated by the VA and the Office of Special Counsel.

30.     In that Affidavit, Bennett also swore that he believed Thompson was being "singled out" by Gaj for mistreatment. Bennett then reported his concerns about Gaj's managerial conduct and retaliatory harassment to Gaj's superiors in the VA system. Bennett also raised these questionable issues and practices within VA human resources representatives. Bennett reported to VA management officials that the disciplinary actions against Thompson were unnecessarily issued by him under duress and threats from Gaj. (See, **Exhibit B,**" at pp. 6-7, 10).

31.     When asked about whether Thompson was subjected to a hostile work environment harassment by Gaj and others, Bennett wrote in his Affidavit that, "I believe Steven Gaj has created a hostile work environment at Cleveland VAMC OIT. This position is shared by nearly all management (past and present) [excluding] the current DFCIO and possibly one other. We all (management) have historically, attempted to correct this situation with no success." (See, **Exhibit B,**" at p. 7).

32.     Bennett stated that on August 19, 2015, he issued Thompson an admonishment "under duress from Steven Gaj..." when Bennett believed a verbal counseling would have been sufficient corrective action under VA disciplinary policy. (See, **Exhibit B,**" at p. 8).

33.     Bennett also stated in that Affidavit that he had been subject to the very same hostile work environment brought by Gaj's retaliatory nature. (See, **Exhibit B,**" at p. 11).

34.     According to Bennett, Gaj fraudulently composed Thompson's job description in a manner that ensured Thompson's pay grade would be lower than national standards. (See, **Exhibit B,**" at p.11). None of Bennett's sworn averments were properly investigated by the VA.

35.     According to Bennett, Thompson had been subjected to a hostile work and retaliatory environment that exasperated by Thompson's protected activity.

-8-

36.     In that Affidavit, Bennett described Gaj's conduct in the workplace as being "obscene and hostile verbally to employees from GS-5 to GS-13," including Thompson, while also invading employee's space through intimidation. (See, **"Exhibit B,"** at p. 11).

37.     According to Bennett, Gaj's conduct in workplace towards Thompson and others "created a discontent workplace and hostile work environment." (See, **"Exhibit B,"** at p. 11).

38.     In that Affidavit, Bennett averred that, "I do not question that [Thompson] has been subject to a retaliatory and hostile work environment only exacerbated by his involvement in attempting to correct the problem via EEOC means within his right." (See, **"Exhibit B,"** at pp. 11-12).

39.     Subsequent to the release of that Bennett Affidavit on December 23, 2015[3] and Thompson's continued protected activity, Thompson was subjected to even more heightened scrutiny and monitoring, frequent reprimands, discriminatory actions, harassing conduct, increased surveillance, retaliatory behavior, selective enforcement of VA policy, and harsher discipline than similarly situated peers by defendants.

40.     On October 24, 2017, Thompson suffered a serious injury to his back while at work, and he received medical treatment, and he timely reported that work related injury to the VA. Subsequently, Thompson filed a worker's compensation claim with the VA (OWCP Claim Number: 092190199).

41.     On December 19, 2017, the U.S. Department of Labor ("DOL") accepted and approved Thompson's workplace injury claim. Thereafter, Thompson made several verbal requests to his supervisors for an accommodation. Subsequent to the approval of his claim from

---

[3]      That EEO Investigation was submitted in January 2016.

the DOL, Thompson notified VA management about taking leave from work. He sought and received pre-approved leave from work (with or without pay) for illness or medical care for his back injury.

42.     On or about July 14, 2017, Thompson received a written Proposed Notice of Suspension for seven (7) days from Gaj.

43.     On or about August 14, 2017, Thompson received a letter of seven (7) day suspension from Gaj, and he was suspended without pay from August  27, 2017 through September 2, 2017.

44.     On October 24, 2017, Thompson suffered a serious injury to his back while at work, and he received medical treatment and he timely reported that work related injury to the VA. Subsequently, Thompson filed a worker's compensation claim with the VA (OWCP Claim Number: 092190199).

45.     On December 19, 2017, the U.S. Department of Labor ("DOL") accepted and approved Thompson's workplace injury claim.

46.     Subsequent to the approval of  Thompson's claim from the DOL, Thompson notified VA management about taking leave from work. Thompson sought and received pre-approved leave from work (with or without pay) for illness or medical care for his back injury.

47.     On or about January 8, 2018, Thompson submitted written documentation of his disability to the VA which restricted his ability to work as follows: "Patient can work in a sedentary position only . . . no lifting, pulling or pushing over ten pounds." (Center for Orthopedic Surgery, Garfield Heights, Ohio Michael A. LoPresti, M.D.). Dr. LoPresti recommended that

-10-

Thompson would not be available for full work duties without restrictions until February 22, 2018.

48. On January 22, 2018, Thompson was falsely marked as Absent Without Official Leave ("AWOL") by management after when he received preapproval from his supervisor to off work due to his health.

49. On February 6, 2018, the Center of Orthopedic Surgery notified the VA in writing that Thompson was under its medical care and treatment for his disabling back injury. After submitting that disability documentation to the VA, on that same date, Thompson was accused of violating VA's AWOL policy after he wrote to his supervisor asking for sick and/or medical leave because of his severe back pain.

50. VA Medical Center Policy 005-007, dated as of March 21, 2017, allows for absence without charge to leave and that service chiefs may approve short periods of authorized absence consisting of one day or less. VA policy also permits employees to take leave from work with or without pay for illness or disability.

51. Thompson took days off from work for medical treatment for his back injury or disability with supervisory preapproval. After returning to work, Thompson was disciplined by Gaj.

52. On or about February 6, 2018, Thompson received a Report of Contact that accused him violating VA time and attendance policy.

53. On February 7, 2018, Thompson sought EEO counseling in writing related to his back disability and false claim of being AWOL (Agency No. 200H-0005-2018102350). At that time, Thompson alleged disability discrimination, retaliation and hostile work environment

-11-

against Gaj and David Spernoga ("Spernoga"), a supervisory IT specialist and Thompson's immediate supervisor.

54.     On or about February 8, 2018, Thompson was given a proposed Temporary Modified-Duty Assignment ("Assignment") for the period from February 8, 2018 to February 28, 2018 that was noncompliant with the written medical restrictions from Thompson's physician, Dr. LoPresti from January 10, 2018.

55.     At that time, Thompson believed that the VA did not bother engaging in a good faith attempt at the proper interactive process under the law and Processing Request for Reasonable Accommodations For Employees and Applicants with Disabilities ("VA-RA policy").

56.     On or about February 14, 2018, Thompson refused in writing to accept that Assignment because Thompson believed that it would re-aggravate his back injury and disability, and that proposed Assignment failed to comply with and/or respect Dr. LoPresti's medical recommendations for Thompson's disability.

57.     On that same date, Thompson was told by Spernoga that he had to report to him when he leaves and comes back to front desk while he was on restricted work duty. To Thompson's knowledge, no other employee in OI&T had ever been required to report daily or hourly to a supervisor when they had a known disability.

58.     On February 26, 2018, Thompson's first EEO complaint against the VA from 2014 was scheduled for a telephonic Pre-Hearing Conference for April 19, 2018 before an EEOC Administrative Judge in EEOC Charge No. 532-2015-000023X.

-12-

59.     On March 16, 2018, Thompson's physician, Dr. Michael E. Saridakis, D.O. ("Dr. Saridakis") completed the Labor Dept. Certification of Health Care Provider for Employee's Serious Health Condition for FMLA application, in which Dr. Sadridakis stated that: "Due to ongoing medical issues, it is necessary that [Thompson] take time off as needed for pain management" regarding Thompson's back injury.

60.     In that FMLA application, Dr. Saridakis wrote that Thompson's ongoing injury to his back dates back to 2000, and he recommended that Thompson be absent from work "up to 2 times per week, 4 episodes per month."

61.     On March 23, 2018, Thompson applied for FMLA intermittent leave (twice a week) and for an accommodation with the VA for the period from March 26, 2018 through March 25, 2019 for chronic back pain management and medical treatment.

62.     On April 23, 2018, Thompson received his midyear performance evaluation from Speronoga that graded his work performance as, "Fully Successful or better." Nothing in that performance evaluation suggested that Thompson was incapable of performing the essential functions of his job with or without an accommodation.

63.     On May 1, 2018, Thompson's request for intermittent sick leave and/or accommodations due to his disability was disapproved by the VA without ever engaging in the interactive process pursuant to VA policy.

64.     From the time period from January 2018 through May 2018, and even thereafter, both Thompson, and his doctor, made multiple oral and written requests to the VA for reasonable accommodations for Thompson in the workplace due to his injury and back disability.

-13-

65.     None of Thompson's requests during that time period for an accommodation
were ever properly processed in accordance with VA policy or federal law. None of those
requests were expeditiously or quickly processed within thirty (30) days or less. None of those
requests were engaged by VA managers in the interactive process after the requests were made
by Thompson pursuant to VA policy or federal law. And, none of Thompson's requests for an
accommodation posed an undue hardship on the VA.

66.     All of Thompson's requests for reasonable accommodations whether oral or
written during the time period from January 2018 through May 2018 were summarily denied.

67.     Subsequent to EEO counseling, on May 15, 2018, Thompson filed a third formal
EEO complaint with the VA. In that complaint (Agency No. 200H-0005-2018102350),
Thompson alleged that he was falsely accused of being absent from work during a government
furlough and marked AWOL without prior approval sick leave; being the only the IT Specialist
in OI&T to be frequently monitored due to his disability; subjected to increased scrutiny and
required to hourly report to his immediate supervisor when he leaves his desk and comes back
from the front desk, even if he is going to the restroom; taking work breaks or going to lunch;
and, the lack of formal training and professional development.

68.     Following seeking EEO Counseling on February 7, 2018 and the filing of a third
EEO complaint on May 15, 2018, Thompson was subjected to more unwarranted and retaliatory
disciplinary actions that have resulted in adverse employment actions for engaging in protected
activity, including[4], *inter alia*, increased heightened surveillance of his daily work duties; denial

---

[4]     Many of these adverse employment actions against Thompson took place within a
five (5) month period after he sought internal EEO counseling for the third time at the VA, and
applied for FMLA intermittent sick or medical leave for his chronic back pain and disability.

-14-

of his requests for medical leave related to prior workplace injury, severe back pain and

workplace reasonable accommodations; a suspension without pay; false claims of AWOL when

he became sick at work after receiving supervisory preapproval; and, the lost of pay and benefits.

69.     On May 17, 2018, less than four (4) months after seeking informal EEO

counseling and two (2) day after filing his third EEO complaint with the VA, Thompson received

a second suspension for seven (7) days without pay from Gaj.

70.     That suspension was also issued to Thompson less than thirty (30) days after

receiving a "Fully successful or better" midyear performance evaluation from Speronoga.

71.     On May 30, 2018, Thompson was falsely accused of abusing the VA's sick leave

policy by Speronoga because he had taken sick leave days off due to his disability and chronic

back pain, and having to attend scheduled medical appointments with his physicians and/or

therapists for his disability.

72.     Prior to May 30, 2018, Thompson always notified VA management when he had

to take days off from work. VA management, by and through Speronoga and Gaj, was well aware

that Thompson took days off from work (with or without pay) for illness or treatment for his

disability.

73.     On or about June 18, 2018, less than thirty (30) days after filing a third EEO

complaint, Thompson received a disciplinary Notice from Defendant Gaj, and he was suspended

from work without pay for ten (10) days.

74.     On July 10, 2018, Thompson initiated a third EEO complaint for workplace

harassment and retaliation was accepted by the VA Office of Resolution Management for further

investigation.

-15-

75.     On August 1, 2018, Thompson filed the original Complaint in this action, pro se.

76.     On or about August 30, 2018, due to chronic back pain, Thompson and his personal physician, Dr. Saridakis, completed the VA's request for medical documentation application because Thompson made another request for a workplace accommodation. In that application, Dr. Saridakis wrote that Thompson " . . . cannot bend twist, kneel, or crawl as this will aggravate back condition." Dr. Saridakis described Thompson's physical impairment as, "chronic, recurring back pain.[5]"

77.     After filing another written request for an accommodation in August 2018, the VA never bothered to process Thompson's request under VA policy.

78.     On or about October 16, 2018, Thompson sought EEO informal counseling again regarding his disability and request for an accommodation. At that time, Thompson alleged that he was subjected to discrimination, retaliation and hostile work environment. Specifically, Thompson claimed that he was wrongly marked AWOL after he requested an accommodation for his injured back and disability, and he had been pre-approved by for sick and/or medical leave due to his disability.

79.     Subsequently, Thompson filed a fourth formal EEO complaint on November 19, 2018 with VA, alleged that he had been subjected to disability discrimination (severe back pain) and retaliation (prior EEO activity) by the VA.

---

[5]     Both before and after Thompson injured his back at work and applied for a reasonable accommodation, he was still forced by OI&T management to perform his IT Specialist full job duties that either seriously re-aggravated or re-injured his chronic back injury at work that now requires significantly more medical treatment and care.

80.     On December 14, 2018, Thompson received his 2017-2108 annual performance appraisal from Speronoga for the work period from October 1, 2017 through September 30, 2018. Thompson's work performance was again graded by VA management as "fully successful or higher." Nothing in that performance evaluation suggested that Thompson was incapable of performing the essential functions of his job with or without an accommodation.

81.     On December 14, 2018, Thompson received his 2017-2108 annual performance appraisal from Speronoga for the work period from October 1, 2017 through September 30, 2018. His work performance again was graded by VA management as "fully successful or higher." There was no indication in that evaluation that Thompson was unable to perform the essential functions of his job as an IT Specialist due to his disability.

82.     In early January 2019, a year after Thompson's initial requests for an accommodation, he was instructed by Spernoga to contact Monica Meyers ("Meyers"), the OI&T's Reasonable Accommodation Coordinator ("RAC"), regarding his accommodation request. During their telephone discussion, Meyers told Thompson that his accommodation request to do Telework from home (for one to two days a week) was a reasonable request under VA-RA policy.

83.     On or about January 18, 2019, Thompson was officially assigned to a desk position to work on laptops by Spernoga. However, this Accommodation Request Determination ("Determination") did not involve the interactive process and an assigned coordinator as mandated by VA-RA policy. Instead, Spernoga demanded that Thompson sign the Determination notice without using the proper interactive process with a coordinator. Thompson told Spernoga that they needed to meet with the assigned interactive process coordinator before he signed the

Determination.

84.    Since 2017, after his back injury at work, Thompson was unjustly and harshly scrutinized as a result of his disability and a great deal of time he was repeatedly singled out and disciplined by VA management while other OI&T staff employees were not for identical infractions.

85.    Since early 2018, when Thompson requested time off from work to accommodate a medical procedure on his disabled back to relieve the daily pain, he was summarily denied medical leave by VA and its management. The medical procedure was necessary to ameliorate the constant pain he experienced on a daily basis at work as a result of my disability and/or injury. Thompson maintains that the treatment that he received from the VA as well as other supervisors were humiliating, degrading, unlawful, discriminatory, retaliatory and created a hostile working environment.

86.    Once Thompson requested a reasonable accommodation, VA had a duty under the Act and VA-RA policy to engage in the interactive process. Specifically, by law, VA must identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations. The VA did not comply with its policy or the law.

87.    On or about March 26, 2019, for the first time since Thompson initially requested an accommodation for his disability, the VA finally formally processed Thompson's request for an accommodation under the VA-RC policy.

88.    On that date, Thompson received an email from Meyers as the "point of contact" regarding his requests and the interactive process. Meyers instructed both Thompson and VA

-18-

management to "cease and desist" as any discussions of any requests for accommodations by Thompson because she was now in charge of the accommodation process. Prior to that email, Thompson's prior requests for an accommodation were never processed by any RAC and the interactive process.

89.     As per the EEOC "Order of Dismissal," dated July 30, 2019, by Administrative Judge Francis Polito (EEOC No. 530-2019-00324x and Agency No. 200H-0005-2018102350), Thompson was advised that he had exhausted his administrative remedies in the EEOC's federal sector system as it has been more than 180 days since the filing of Thompson's administrative complaint for disability discrimination, retaliation and hostile work environment.

90.     On August 5, 2019, Thompson filed a Motion for Leave to File a Second Amended Complaint ("Motion") that included his claims of disability discrimination, hostile work environment and retaliation in EEOC No. 530-2019-00324x and Agency No. 200H-0005-2018102350.

91.     Some three (3) months after the "Order of Dismissal," and less than three (3) months after filing that Motion, by letter dated October 29, 2019, VA management by sought to permanently remove Thompson from the OI&T Department as an IT Specialist by claiming that Thompson was medically unable to perform his job duties without any medical evidence, or any proof that he could no longer perform the essential functions of his job with or without an accommodation.

92.     On October 31, 2019, Thompson received his 2018-2019 annual performance appraisal from his immediate supervisor, Joseph Green, for the work period from October 1, 2018 through September 30, 2019. His work performance again was graded by VA management

-19-

as "fully successful or better." There was no indication in that evaluation that Thompson was unable to perform the essential functions of his job as an OI&T Specialist due to his disability.

93.     In a letter dated November 4, 2019, Dr. Saridakis medically certified to the VA that Thompson is "job ready and is likely to succeed in performing the duties."

94.     As a result of the VA's adverse employment action, Thompson was forced into early retirement in late November 2019.

## GENERAL VA HANDBOOK POLICY

95.     The VA-RA Handbook policy specifically addresses the policies on "Time Frame," "Interactive Process, and "Denial of Request for Accommodations."

96.     Section 6 of the policy (Time Frame), at page 18, reads in part that: "All requests for accommodation should be processed as expeditiously as feasible. Requests from applicants should be expedited and processed within ten (10) calendar days. Requests from employees should ordinarily be processed within thirty (30) calendar days, not counting the time waiting for medical documentation. ***The U.S. Equal Employment Opportunity Commission has ruled that when a disability is known and the accommodation can be easily provided, failure to process the accommodation request quickly could constitute undue delay in violation of the Rehabilitation Act[6].*** Thus, VA offices and facilities are expected to provide the accommodation in a shorter time frame, when possible." (Emphasis added).

---

[6]     "The Rehabilitation Act of 1973 governs [ federal] employee claims of handicap discrimination against the Federal Government. Its basic tenet is that the Government must take reasonable affirmative steps to accommodate the handicapped, except where undue hardship would result." *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993). The Act provides that "[n]o otherwise qualified individual with a disability" shall be discriminated against by a federal agency "solely by reason of her or his disability." 29 U.S.C. § 794(a).

97.     Further, that Section states that: " The time frame begins as soon as the applicant or employee requests a change because of a disability. Do not wait for a written request."

98.     Section 9 of the policy (Interactive Process), at page 21, states as follows:

"a. When the individual makes an oral or written request for reasonable accommodation, managers should ordinarily begin to engage in the interactive process with the individual after receiving notice of the request. The interactive process is the communication between the DMO and the employee, in consultation with the LRAC, to determine how best to respond to the employee's request. During this process, an individualized assessment will be conducted to review essential and marginal job functions, the employee's limitations, and possible accommodations. The interactive process may require more than one discussion. The DMO or LRAC will also explain the reasonable accommodation process to the employee at this time.

b. Ongoing communication and cooperation are important, especially when a specific limitation, problem, or barrier is unclear or when the disability or an effective accommodation is not obvious. Thus, interactive discussions should be documented, with at least the date, time, participants, and key points noted.

c. In the case of an applicant for employment, the local HRMO (or his or her designee) will engage in the interactive process with the applicant.

d. Once a job offer has been made, if an accommodation is requested, the interactive process with the new employee with a known disability (post offer but pre-on boarding) should be conducted by the supervisor and the LRAC, in consultation with the GC, RC or NRAC, if necessary, to discuss and identify possible accommodations, and ensure that the requested accommodation is in place when the new employee starts.

-21-

e. Failing to engage in the interactive process is a violation of the Rehabilitation Act of 1973, as amended, and may create liability for VA."

99.     Section 21 of the policy (Denial of Reasonable Accommodation Requests), at page 33, states that, "After consultation with the NRAC or Regional OGC, the DMO may deny the request for accommodation for the following five reasons: (1) Undue hardship; (2) Insufficient Medical Documentation; (3) Removes Essential Function(s); (4) Lower Standards; and (5) Direct Threat."

100.    None of these reasons justify the denial of a reasonable accommodations to Thompson as this policy is applied to his request.

## CLAIMS FOR RELIEF

### CLAIM 1

**DISCRIMINATION AND RETALIATION IN VIOLATION OF THE CIVIL RIGHT ACT OF 1964, TITLE VII, 42 U.S.C. §2000e-3(A), BY THOMPSON AGAINST VA**

**(RACE DISCRIMINATION AND RETALIATION)**

101.    Thompson incorporates all previous allegations.

102.    Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), it is an unlawful employment practice for an employer to discriminate (i.e., retaliate) against its employees because she opposed an unlawful discriminatory practice or because she made a charge or participated in any manner in an EEOC proceeding.

103.    Thompson had a reasonable, good-faith belief that Defendant VA, by and through its management officials, had discriminated against him on the basis of  his race, and complained about this unlawful practice.

104.     Thompson had a reasonable, good-faith belief that he was being retaliated against for his participation in protected activity, and opposition to this unlawful practice of imposing unwarranted and baseless disciplinary actions without cause or justification after filing EEO and EEOC complaints, or verbally complaining to VA management officials about discriminatory and retaliatory practices against him in the workplace.

105.     Thompson was engaged in protected activity under VA policy and Title VII by opposing discrimination internally, and by later filing a charge of discrimination with the EEOC.

106.     Thompson engaged in protected activity under Title VII by opposing discrimination (retaliation for participating in EEO proceedings and opposing discrimination) internally and by filing a charge of discrimination with the EEOC regarding the race, hostile work environment and retaliation he faced at the hands of VA management.

107.     Defendant VA was aware that Thompson was engaged in protected activity.

108.     Defendant VA  intentionally and maliciously discriminated against Thompson after he opposed an unlawful discriminatory practice of imposing unwarranted and baseless disciplinary actions without cause or justification after filing EEO and EEOC complaints, or verbally complaining to VA management officials about discriminatory and retaliatory practices in the workplace against him.

109.     Defendant VA, and its managers and supervisors, retaliated against Thompson in numerous ways including, but not limited to, the following adverse and material employment actions:

a.     Engaging in heightened scrutiny of Thompson's attendance and workplace performance, and threatening Thompson with disciplinary actions;

b.    Forced to hourly report to OI&T supervisors whenever Thompson went to the restroom, left his work station to perform daily work tasks, took work breaks, attended meetings, or went to lunch;

c.    Giving Thompson conflicting supervisory work instructions in order to make it more difficult for him to perform his daily IT Specialist duties;

d.    Changing Thompson's job description in a manner that ensured his pay grade would be lower than the national standard;

e.    Lodging false and baseless accusations against Thompson regarding daily IT Specialist job duties and assignments;

f.    Forcing Thompson to defend himself against the false and baseless allegations in a mediation and/or predeprivation hearing;

g.    Using the false and baseless allegations as a basis for unwarranted disciplinary actions including written admonishments, suspensions and lost of pay;

h.    Forcing Thompson to clean up "trash" in a trailer and move heavy equipment when VA management knew he suffered from severe back pain and a disability;

I.    Falsely accusing Thompson of disrespecting VA supervisors in order to discipline him;

j.    Increased daily supervisory monitoring and frequent surveillance by Gaj at his work station;

k.    Accusing Thompson of being AWOL and abusing VA attendance policy after he received preapproval to be absent from work for sickness, illness and/or medical treatment on with his disability with or without pay;

-24-

l.   Thompson receiving three (3) work suspensions after engaging in EEO
     Counseling and filing EEOC complaints that resulted in the lost of pay and
     benefits;

m.   Fraudulent disciplinary actions at the request of Gaj and other VA supervisors;

n.   Denied training and professional development for Thompson for promotional
     purposes; and

o.   Denying Thompson a job transfer or reassignment to another VA department.

110.   The frequent harassment and retaliation suffered by Thompson changed the terms
and conditions of his employment at the VA because it unreasonably interfered with his job
performance and the terms and conditions of his job.

111.   The retaliation that Thompson suffered at the hands of VA management would
deter and/or dissuade any reasonable employee from engaging in EEO protected activity.

112.   Defendant VA is vicariously liable for its agents' acts toward Thompson.

113.   Defendant VA, through its agents or supervisors, unlawfully discriminated and
denied equal employment opportunities and other terms and conditions of employment against
Thompson because of his race  when it imposed, by and through its supervisors, unwarranted and
baseless disciplinary actions without cause or justification.

114.   Thompson believes that younger and non-black staff employees within OI&T
have not been subjected to unwarranted and baseless disciplinary actions without cause or
justification after engaging in protected activity.

115.   Thompson believes that significantly younger and non-black peers within OI&T
have not been summarily denied additional training and professional development for

-25-

promotional purposes at the VA.

116.    Thompson knows that significantly younger and non-black peers within OI&T have had more promotional opportunities with increases in pay, pay grade and benefits because he filed internal EEO complaints with the VA and an external EEO complaint.

117.    As a direct and proximate result of this unlawful conduct, Thompson has suffered and will continue to suffer economic and non-economic damages for which Defendant VA is liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

## CLAIM 2

### DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHT ACT OF 1964, TITLE VII, 42 U.S.C. 2000e-3(A), BY THOMPSON AGAINST VA

### (HOSTILE WORK ENVIRONMENT)

118.    Thompson incorporates all previous allegations.

119.    Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), it is an unlawful employment practice for an employer to discriminate (i.e., retaliate) against its employees because she opposed an unlawful discriminatory practice or because she made a charge or participated in any manner in an EEOC proceeding.

120.    Defendant VA subjected Thompson to a hostile work environment based on his race through severe and/or persuasive actions, thereby negatively altering the conditions of his employment and creating an abusive working environment.

121.     Despite Thompson's specific internal EEO complaints to VA management and human resources, Defendant VA failed to properly investigate and take any appropriate action to

redress the discriminatory and retaliatory work conditions imposed on Thompson in the workplace after his internal written requests to cease and desist the discriminatory and retaliatory conduct of its management.

122.    Defendant VA took continued and systematic adverse employment actions against Plaintiff, at least in part, because it regarded him as employee who needed to retire from work because of his race.

123.    Defendant VA, through its agents or supervisors, unlawfully discriminated and denied equal employment opportunities and other terms and conditions of employment against Thompson because of his race when it imposed, by and through its supervisors, unwarranted and baseless disciplinary actions without cause or justification.

124.    Thompson believes that similarly situated peers within OI&T have not been subjected to a hostile work environment and retaliatory harassment by VA management.

125.    The VA's actions are severe and pervasive, especially given the fraudulent practice of fabricating unwarranted and baseless disciplinary actions without cause or justification in retaliation for Thompson engaging in protected activity.

126.    Thompson had a good faith and reasonable basis to complain about discrimination which constitutes protected activity.

127.    As a direct and proximate result of this unlawful conduct, Thompson has suffered and will continue to suffer economic and non-economic damages for which Defendant VA is liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

## CLAIM 3

### DISABILITY DISCRIMINATION AND RETALIATION
### BY THOMPSON AGAINST DEFENDANT VA

### (DISABILITY DISCRIMINATION AND RETALIATION)

128.     Thompson incorporates all previous allegations.

129.     Federal anti-discrimination laws prohibit employment discrimination against

qualified individuals with disabilities in the federal sector. Federal law prohibits discrimination

against qualified individuals with disabilities by any program or activity receiving federal

financial assistance or by any program or activity conducted by a federal executive agency, and it

prohibits discrimination and retaliation in employment against disabled persons by federal

agencies.

130.     Thompson has a physical disability that substantially limits a major life activity.

Thompson, who had surgery because of a bulging disk due to a workplace injury and a number of

other medical procedures, is disabled due to his chronic back pain which prevents him from

sitting for long periods of time and, at certain times, standing for long periods of time, bending

over at work and lifting heavy objects.

131.     Defendant VA has been well aware of  Thompson's chronic back disability.

Defendant VA has received Thompson's physician's statements, medical records, employee

statements, and his supervisor's statement in his application for a reasonable accommodation and

modification of his daily work schedule in OI&T.

132.     Thompson, who is otherwise qualified for the job, has made repeated requests

(oral and written) to Defendant VA and its supervisors for reasonable accommodations and

modifications to his daily work schedule regarding his long term disability.

133.    Once Thompson requested an accommodation, he was engaged in protected activity. Defendant VA had a duty under VA policy and law to immediately engage in an interactive process. Specifically, by policy and law, Defendant VA must identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

134.    Defendant VA is mandated by law to engage in a "good faith" process and an "individualized inquiry" to determine whether a reasonable accommodation can be made to Thompson. Instead, Defendant VA required to perform his job duties in spite of obvious disability.

135.    Defendant VA and its supervisors failed to properly engage in the interactive process under federal law when Thompson requested a reasonable accommodation in February 2018.

136.    The VA's delay until 2019 in making available a reasonable accommodation for Thompson was so lengthy as to be unreasonable under the VA-RC policy. (Section 9 of the VA-RC policy specifically provides that, ***"Failing to engage in the interactive process is a violation of the Rehabilitation Act of 1973, as amended, and may create liability for VA."***)(Emphasis in original). The VA did not start the process until at least a year or more  after his numerous oral and formal written requests for an accommodation in when Thompson sought formal EEO Counseling under VA policy in February 2018.

-29-

137.    As to the length of the delay, the delay dragged on for more than twelve months. While there is no bright-line test as to how many days or week is an unreasonable delay, this unreasonable  delay of more than twelve months is clearly unreasonable under VA policy law and it constitutes a denial of  Thompson's request for a reasonable accommodation.

138.    The environment, the VA, after Thompson was consistently subjected to disability discrimination via the VA's failure to accommodate him was intimidating, hostile, and offensive. The environment was intimidating because he felt that said commissions and omissions caused him to feel like he was being punished for having various medical conditions associated with his disability, and the humiliation was so great at times it made him depressed. The environment was hostile in that Thompson felt like he was working in a torture machine within the OIT Department ignoring its mandate to reasonably accommodate him, making it appears that the VA did not care about his medical needs or disability, and that he was often investigated and subjected to increased monitoring in conjunction with his reasonable accommodation requests.

139.    As a direct result of his disability and his multiple requests for reasonable accommodations, Thompson has suffered adverse employment actions (denial of reasonable accommodations, increased workplace surveillance, constant supervisory monitoring, unchecked retaliatory harassment, reports of contact, denial of job transfer/reassignment, denial of advanced sick leave, written admonishments, frequent written reprimands, suspensions and forced retirement) from Defendant VA subsequent to his medical diagnosis and treatment for his disability, and therefore, Thompson began to be treated differently and more disparagingly than other employees at the VA without a disability.

140.    The adverse employment actions occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation by Defendant VA for engaging in protected activity under VA policy and the law.

141.    Thompson was unjustly and harshly scrutinized as a result of his disability and a great deal of time he was repeatedly singled out and disciplined by VA management while other OI&T staff employees were not for identical or similar infractions.

142.    As a result of the conduct described above, Thompson has been denied participation in all of the available benefits and programs for VA employees who develop or who have a medically diagnosed disability. By denying Thompson's repeated and continued requests for assistance with his disability and reasonable modifications to his daily work duties, Defendant VA has discriminated and retaliated against Thompson solely on the basis of Thompson's disability in violation the VA policy and federal law and its implementing regulations.

143.    As a direct and proximate result of this unlawful conduct, Thompson has suffered and will continue to suffer economic and non-economic damages for which Defendant VA is liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

144.    Thompson has suffered irreparable harm as a result of the Defendant's' violation of his rights.

## **PRAYER FOR RELIEF**

For the reasons stated above, Plaintiff respectfully requests the following relief from the Court:

A. Declare that Defendants' acts and conduct constitute violations of federal law and the United States Constitution;

B. Enter judgment in Plaintiff's favor on all claims for relief;

C. Award Plaintiff full compensatory damages, economic and noneconomic, including, but not limited to, damages for back pay, front pay, pain and suffering, mental anguish, emotional distress, humiliation, and inconvenience that he has suffered and are reasonably certain to suffer in the future;

D. Award Plaintiff punitive damages as appropriate for all intentional and malicious violations of federal law and constitutional rights;

E. Award pre-judgment and post-judgment interest at the highest lawful rate;

F. Award Plaintiff his reasonable attorneys' fees and all other costs of this suit;

G. Award all other relief in law or equity to which Plaintiff is entitled and that the Court deems equitable just, or proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable within this Second Amended Complaint.

Respectfully submitted,

/s/Sylvester Summers, Jr.
Sylvester Summers, Jr.  (0042482)
Sylvester Summers, Jr., Co., L.P.A.
7804 Linwood Avenue
Cleveland, Ohio 44103
(216) 407-6773 (Cell/Work)
Slyatlaw@msn.com (Email)

Attorney for the Plaintiff
Leroy Thompson

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2020  a copy of the foregoing Second Amended Complaint was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

/s/ Sylvester Summers, Jr.
Counsel for the Plaintiff
Leroy Thompson

-33-