**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEROY THOMPSON, | ) | CASE NO. 1:18CV1777 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| ROBERT WILKIE, | ) | |
| SECRETARY OF THE U.S. DEP'T OF | ) | |
| VETERANS AFFAIRS, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Now pending are the parties' cross motions for summary judgment. Plaintiff, Leroy Thompson (Plaintiff), has moved for partial summary judgment regarding Count Three of his pending complaint, which alleges disability discrimination and retaliation claims against Defendant Robert Wilkie, Sec., Dept. of Veterans Affairs (the VA), pursuant to Federal Rule of Civil Procedure 56. (R. 51). The VA has filed an opposition (R. 55), and Plaintiff has replied (R. 56). In addition, the VA has moved for summary judgment on Plaintiff's pending complaint, pursuant to Fed.R. 56. (R. 52). Plaintiff has opposed the motion, (R. 57), and the VA has replied (R. 59).

For the reasons set forth below, the Magistrate Judge recommends that Plaintiff's partial motion for summary judgment be denied in full, and that Defendant's motion for summary judgment be granted.[1]

[1] This case was referred to the undersigned Magistrate Judge for pretrial supervision. (R. 3).

## I. Relevant Factual Background

### A. Plaintiff's Employment

Plaintiff's employment with the VA is summarized as follows:

- He was hired on July 2, 1989, to work in housekeeping, later transferring to laundry service. He then transferred to the Office of Information and Technology Services (OIT) as a computer assistant. (R. 52-4, PageID# 808-810).

- As a computer assistant, Plaintiff's duties included installing computers, replacing motherboard parts, transferring equipment between Brecksville and Wade Park, and assisting in establishing equipment moves. (R. 52-4, PageID# 810).

- Plaintiff became a computer specialist, later referred to as an information technology specialist, with a pay increase and duties that included installing computers at various locations, transferring computers, data management, paperwork, inventory, remote access data, networking, and addressing computer problems. (R. 52-4, PageID# 812-13.

- Plaintiff had several supervisors: Daniel Bennett (Bennett) was his first line supervisor from August 2012 until October 2, 2015. His second line supervisor was David Spernoga (Spernoga), the third line supervisor was George Wolfe (Wolfe), and fourth line supervisor was Steven Gaj (Gaj). In July of 2017, Spernoga became Plaintiff's first line supervisor, Wolfe the second line supervisor, and Gaj the third line supervisor. (R. 52-4, PageID# 815- 817).

- On October 24, 2017, Plaintiff injured his back at work, reported it to the VA and filed a worker's compensation claim. (OWCP Claim Number: 092190199). (R. 31, ¶40; R. 42, ¶40).

- Plaintiff retired in November of 2019. (R. 31, ¶94).

### B. Plaintiff's EEOC History

During his employment with the VA, Plaintiff filed four complaints of discrimination. Although the Plaintiff references all four complaints in his pleadings, only two are relevant here as explained *infra*.

The general process of filing a complaint is as follows: The employee must consult with an EEO counselor within 45 days of alleged retaliation or discrimination. 29 C.F.R.

§1614.105(a)(1). If the matter cannot be resolved informally, the employee must file a formal complaint with the employing agency's EEO office within 15 days of receiving notice of the right to file. 29 C.F.R. § 1614.105(d); 29 C.F.R. §§ 1615.106(a), (b). After the EEO investigates the complaint and takes final agency action pursuant to 29 C.F.R. §§1614.108(a), 1614.110, the employee may file a civil action in federal court or request a hearing before the EEOC. 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.407(a), (b), 1614.402(a). If the employee elects to file an EEOC appeal, the employee may proceed to the district court within 90 days of receipt of the EEOC's final decision, or after 180 days from the date of filing an appeal with the EEOC if there has been no final decision. *See* 29 C.F.R. § 1614.407(c), (d).

### 1. Case No. 200H-0005-2014102480 ("the 2480 Claim")

On April 8, 2014, Plaintiff initiated contact with an EEO counselor and counseling concluded on May 7, 2014. (R. 52-2, PageID# 749). Plaintiff filed his formal complaint of discrimination on May 19, 2014, asserting the following complaints:

> Whether [Plaintiff] was subjected to a hostile work environment on the bases of religion (Christian), and age as evidenced by the following events:
>
> 1) In April 2009, [Plaintiff] was denied the professional development opportunity to attend the Leadership Initiative Training for Employees (LITE).
> 2) On September 2, 2013, [Plaintiff] received a lower performance rating of fully successful for FY 2013.
> 3) On September 25, 2013, Mr. Steven Gaj (SG), Facility CIO, verbally reprimanded and called Plaintiff "dumb" in front of other personnel.
> 4) On October 1, 2013, SG accused [Plaintiff] of not responding to a high priority work ticket.
> 5) On December 9, 2013, SG bullied [Plaintiff] when he assigned [Plaintiff] the task of updating the Medical carts on Ward 5B immediately[,] regardless of the task previously assigned by [Plaintiff's] supervisor.
> 6) From March 24, 2014 to April 10, 2014, SG reassigned some of [Plaintiff's] duties to another coworker.
> 7) On April 2, 2014, SG denied [Plaintiff's] request to receive training on Windows 7.

> 8) On April 2, 2014, SG told [Plaintiff] that he would have to take the Windows 7 training on his own time.
> 9) On April 8, 2014, Daniel Bennett, Supervisor, threatened to put [Plaintiff] on a Performance Improvement Plan (PIP).

(R. 52-2, PageID# 751-52).

On July 2, 2014, the Office of Resolution Management (ORM) issued notice that the complaint was accepted for investigation as follows: Events one and two as individually actionable claims were dismissed but still considered as part of Plaintiff's hostile work environment claims, which consisted of Events one through nine; Events six and seven were accepted for investigation as independently actionable claims and were also considered part of Plaintiff's hostile work environment claims. (R. 52-2, PageID# 752).

On September 2, 2014, Plaintiff submitted the following Event as an amendment to his 2480 Claim:

> 10) On August 22, 2014, Joseph Picklo, Privacy Officer, conducted a fact finding on [Plaintiff] being accused of scanning a confidential case file from Quality Management to evaluate a scanner.

(R. 52-2, PageID# 756). This Event was accepted for investigation as part of the hostile work environment claims. (R. 52-2, PageID# 757). After the investigation was complete, Plaintiff requested a hearing before the EEOC. (R. 52-2, PageID# 749). Thereafter, the EEOC granted summary judgment in favor of the VA on September 21, 2020. (Ex. 53-1).

**2. Case No. 200H-0005-2015103805 ("the 3805 Claim")**

On June 9, 2015, Plaintiff initiated contact with an EEO counselor and informal counseling was unsuccessful. (R. 52-2, PageID# 749). Plaintiff filed a formal complaint of discrimination, on June 18, 2015, which he amended on September 4, 2015. (R. 52-2, PageID# 749, 761).

On September 14, 2015, the ORM acknowledged Plaintiff filed the following issues in his

complaint:

> Whether [Plaintiff] was subjected to a hostile work environment based on race (Black), religion (Christian) and reprisal (prior EEO activity) as evidenced by the following events:
>
> 1. Between June 3, 2015 and July 1, 2015, Danial Bennett (DB), Supervisory IT Specialist, OI&T and Stephen Gaj (SG), Chief, Information Officer (OI&T) issued [Plaintiff] multiple reports of contact (ROC's) for incidents occurring between April 14, 2015 to June 24, 2015.
>
> 2. On August 19, 2015, DB issued [Plaintiff] an admonishment.

(R. 52-2, PageID# 762). The ROC's in claim one were issued for the following matters:

> an accusation that [Plaintiff] left a mandatory staff meeting, rude treatment of a coworker, failing to timely repair a computer, refusing to repair a printer, accessing a room without authorization, stating to another employee that cleaning the printers was not his responsibility, frequently interrupting another employee[,] and telling that employee it was easier to change the printer name and failing to respond to a customer's request to determine the status a help ticket.

(R. 52-2, PageID# 762). The ORM accepted for investigation Events one and two as part of Plaintiff's hostile work environment claims, and accepted Event two as an independently actionable claim of discrimination and reprisal. (*Id.*). On May 17, 2016, the EEO issued a Final Agency Decision (FAD), dismissing the complaint. (R. 52-2, PageID# 766, 775). Plaintiff appealed to the EEOC, and on May 3, 2018, the EEOC affirmed the FAD and dismissed Plaintiff's appeal. (R. 52-2, PageID# 776-782).

**3. Case No. 200H-0005-2018102350 ("the 2350 Claim")**

On February 7, 2018 Plaintiff initiated contact with an EEO counselor and counseling was not successful. (R. 52-2, PageID# 749). On May 15, 2018, Plaintiff filed his formal complaint of discrimination, (R. 55-1) and on July 10, 2018, the ORM accepted the following issues for investigation:

> Whether [Plaintiff] was discriminated against based on reprisal (prior EEOC

> activity) when from January 13, 2016, to the present he was subjected to a hostile work environment with respect to having to report when arriving and departing, false accusations, being given a Report of Contact, intimidation, being made to cleanup messes made by others, not being provided with training and professional development; and the following independently actionable Claim: When on January 22, 2018, [Plaintiff] was marked AWOL, even though he had made prior arrangements.

(R. 52-2, PageID# 786). On October 11, 2018, ORM advised Plaintiff it completed its investigation. (R. 52-2, PageID# 749). On November 15, 2018, Plaintiff requested a hearing before the EEOC. (R. 52-2, PageID# 790). On July 30, 2019, the EEOC dismissed Thompson's appeal "pursuant to complainant's filing of a civil action in federal district court." (R. 26-1, PageID# 270).

#### 4. Case No. 200H-0005-2019100202 ("the 0202 Claim")

On October 16, 2018, Plaintiff initiated another contact with an EEO counselor and informal counseling concluded on November 13, 2018, as unsuccessful. (R. 52-2, PageID# 749, 792). On November 19, 2018, Plaintiff filed a formal complaint of discrimination. (R. 26-2; 55-2, PageID# 792; 55-3; 59-2, PageID# 1449).

On January 30, 2019, the ORM accepted the following issues for investigation:

> Whether Thompson was discriminated against based on disability and reprisal (Prior EEO Activity) when on October 1, 2018, [Plaintiff] was marked Absent Without Leave (AWOL) for September 24, 2018, September 26, 2018, September 27, 2018, and September 28, 2018.

(R. 55-3; 59-2, PageID# 1432, 1450). After the ORM concluded its investigation on or about April 18, 2019, (R. 59-4, PageID# 1468), Plaintiff requested a hearing before the EEOC on May 20, 2019. (R. 59-3, PageID# 1464). The EEOC granted summary judgment in favor of the VA on the 0202 Claim on September 21, 2020. (R. 53-1).

## II. Procedural History

Plaintiff initially filed his complaint *pro se*. (R. 1). Through counsel, he filed a timely First

Amended Complaint (FAC) against the VA and two additional defendants in their official capacity (collectively Defendants). (R. 12, PageID# 71, 74). Defendants filed a partial motion to dismiss seeking dismissal of part of Claims One and Two under Title VII of the Civil Rights Act, 42 U.S.C. §2000e-3(a), as well as Claims Three and Four alleging claims under the Fourteenth Amendment, 42 U.S.C. §§ 1981 and 1983, Claim Five alleging claims under the American with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*., and Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq*., and Claim Six alleging claims under Ohio Rev. Code § 4112.02(I). (R. 16).

The undersigned issued a Report and Recommendation (R&R) concluding that the Court lacked subject matter jurisdiction over Plaintiff's claims as alleged under the Fourteenth Amendment, § 1981 and § 1983, ADA, FMLA, and Ohio Rev. Code § 4112.02(I); and Plaintiff failed to state a cause of action for claims under Title VII that were unexhausted. (R. 23, PageID# 235). Therefore, the undersigned recommended granting Defendants' partial motion to dismiss the FAC, concluding in relevant part that only Plaintiff's Title VII claims based on the exhausted EEOC complaint survived dismissal as follows:

> Thompson's amended complaint references four EEOC claims. The defendant acknowledges that Thompson filed four EEOC claims, but contends that only one such filing is properly before this court. Defendant concedes that one claim (R. 16-3; Agency Case No. 200H-0005-2015103805) has been administratively exhausted, but asserts that a different EEOC claim (R. 16-2; Agency Case No. 200H-0005-2014102480) is not directly reflected in the allegations asserted in the amended complaint, and two additional EEOC claims have not been exhausted (R. 16-6; Agency Case No. 200H-0005-2018102350 and R. 16-8; Agency Case No. 200H-0005-2019100202). (R. 16-1, PageID #: 133-134, 137-141; *see generally* R. 12, PageID #: 76, ¶22.) The amended complaint pleaded that Thompson received a right-to-sue letter dated May 3, 2018, for the claims in R. 16-3, Agency Case No. 200H-0005-2015103805, which was thereby exhausted. (R. 12, PageID #: 85, ¶71; *see also* R. 16-1, PageID #: 133; R. 16-4; R. 16-5.) Thompson's brief in opposition does not contest defendants' assertions that his other Title VII claims have not been exhausted. (R. 19, PageID #: 217-224.) Therefore, it is recommended that the Title VII claims that were not raised in Agency Case No. 200H-0005-2015103805 be dismissed for failure to exhaust administrative remedies. In his exhausted EEOC

> complaint, No. 200H-0005-2015103805, Thompson raised claims of discrimination on the basis of race, alleging a hostile work environment and retaliation, during April 2015 through August 2015. Defendants have not moved to dismiss those claims and they are properly before this court. *See* R. 16-3, Agency Case No. 200H-0005-2015103805; PageID #: 155-156; *see generally* R. 12, PageID #: 77-78, ¶¶ 30-32.

(R. 23, PageID# 243-44). The Court adopted the R&R. (R. 29). Therefore, as of December 4, 2019, only the 3805 Claim—asserting race-based discrimination, hostile work environment, and retaliation from April 2015 through August 2015—was properly before the Court.

On August 5, 2019, Plaintiff filed an untimely motion for leave to file a second amended complaint (SAC). (R. 26). The VA opposed on August 20, 2019, stating that it did "not contest that Thompson has now exhausted his administrative remedies as it relates to" the 2350 Claim, and that it "does not object to Thompson amending the complaint to include the claim of reprisal and disability discrimination addressed in" the 2350 Claim. (R. 28, PageID # 309-10.). The undersigned granted Plaintiff's motion for leave to file a SAC on January 14, 2020, noting that the VA did not contest the motion for purposes of the 2350 Claim, (R. 30, PageID# 330), and because "Plaintiff's FAC attempted to assert claims related to the now exhausted 2350 Claim (R. 26)." (R. 30, PageID# 332).

The Court, however, limited this leave to file a SAC to claims based on the 3805 Claim (race discrimination, hostile work environment and retaliation), and indicated "Plaintiff may also include claims based on the exhausted EEOC complaint No. 200H-05-2018102350 [the 2350 Claim], filed May 15, 2018." (R. 30, PageID# 332). The Court ordered that to the extent Plaintiff's 2350 Claim exhausted hostile work environment, retaliation, and disability discrimination, such would be permitted but cautioned that "Any other proposed amendments to the FAC, such as reviving abandoned ADEA claims or bringing wholly new causes of action under the Rehabilitation Act, were not timely filed by the January 15, 2019, deadline to amend the pleadings,

and Plaintiff has not shown that justice so requires further leave be granted." (*Id*.).

Plaintiff filed his SAC on January 31, 2020, asserting three causes of action against the VA:

1. Race discrimination and retaliation, in violation of Title VII, 42 U.S.C. § 2000e-3(A) (R. 31, PageID #: 355-359);

2. Hostile work environment discrimination, in violation of Title VII, 42 U.S.C. § 2000e-3(A) (R. 31, PageID #: 359-360); and,

3. Disability discrimination and retaliation after requesting accommodations (R. 31, PageID #: 361-364).[2]

(R. 31, PageID# 355-364).

Despite initially acquiescing to Plaintiff filing an SAC with a disability discrimination claim stemming from the 2350 Claim, Defendant subsequently concluded that the 2350 Claim did not actually assert or exhaust any disability discrimination claims. Consequently, the VA moved to dismiss Count Three of the SAC, explaining that it "erroneously stated that claim 2 [of the 2350 Claim which alleged "on January 22, 2018, [Plaintiff] was marked AWOL, even though he had made prior arrangements"] was accepted as an independently actionable claim of discrimination based on disability…. However, a review of the EEOC records reveals claim 2 was not accepted for investigation on the basis of disability discrimination." (R. 32-1, PageID# 375). Therefore, the VA asserted that the 2350 Claim did not include disability discrimination claims, and any such claims in the SAC were not properly before the Court. (*Id*.). Plaintiff opposed the VA's motion. (R. 34).

---

[2] Thompson's SAC succinctly summarizes his retaliation claim as follows: "By denying Thompson's repeated and continued requests for assistance with his disability and reasonable modifications to his daily work duties, Defendant VA has discriminated and retaliated against Thompson solely on the basis of Thompson's disability…." (R. 31 ¶ 143, PageID# 364).

The undersigned recommended denying the VA's motion to dismiss Count Three of the SAC without prejudice, noting that "such arguments are more appropriately addressed on the merits of a full record." (R. 36, PageID# 418). In addition, the undersigned noted that "Thompson has plausibly pleaded that the 2350 EEOC charge stems from the same facts as alleged in the SAC, and defendant has failed to show as a matter of law that Plaintiff's disability discrimination claim in Count Three must be dismissed as unexhausted." (R. 36, PageID# 417-18). The Court adopted the undersigned's recommendation. (R. 37). This pertinent issue is now ripe for review on summary judgment and will be further addressed in the next section.

As this extensive procedural history demonstrates, the Court has ruled that, as of the January 15, 2019 deadline to amend the pleadings, the 2350 Claim (asserting retaliation for protected activity) and the 3805 Claim (asserting hostile work environment based on race, religion and retaliation for protected activity) were exhausted. But Mr. Thompson's 2480 Claim (asserting hostile work environment based on religion and age) and the 0202 Claim (asserting disability discrimination and retaliation for pursuing disability claims) were not exhausted. Plaintiff failed to timely move to amend his complaint to incorporate the 0202 Claim or the 2480 Claim and they are not properly before this Court. The Court declines to revisit these prior rulings.[3]

[3] The law-of-the-case doctrine involves a Court's reconsideration of an issue it has already decided in the same proceedings. *Gillig v. Advanced Cardiovascular Sys., Inc.,* 67 F.3d 586, 589 (6th Cir. 1995). While the 'law-of-the-case doctrine is rigidly applied to enforce a lower Court's obedience to a higher Court . . ., the doctrine is more flexibly applied to reconsideration of earlier decisions by the same Court or a coordinate Court.' *United States v. Dunbar,* 357 F.3d 582, 592 (6th Cir. 2004). Accordingly, in the context of prejudgment rulings by the same Court, the law-of-the-case doctrine operates as a guide to the district Court's exercise of its discretion in reconsidering earlier rulings. *Id.* at 593; *see also Scott,* 377 F.3d at 570 (explaining that the doctrine 'merely directs a Court's discretion, it does not limit the tribunal's power') (internal quotation omitted).

## III. Law and Analysis

Now pending before the Court are the parties' cross-motions for summary judgment. (R. 51, 52). Plaintiff moves for partial summary judgment on Count Three of the SAC, alleging disability discrimination and retaliation claims. (R. 51). Conversely, the VA has moved for summary judgment on Count Three, asserting that it is not properly before the Court because Plaintiff did not assert disability discrimination in either the 3805 Claim or the 2350 Claim. (R. 52). In addition, the VA has moved for summary judgment on Counts One and Two of the SAC—race discrimination, retaliation, and hostile work environment. (R. 52). The matters are fully briefed and before the undersigned for an R&R. (R. 51, 52, 55, 56, 57, 59).

For the reasons set forth herein, the undersigned recommends denying Plaintiff's Motion and granting summary judgment to Defendant.

### A. Summary Judgment Standard

Summary judgment is appropriate only if the moving party demonstrates there is no genuine dispute of material fact on an issue that would entitle the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a). Non-moving parties may not rest upon the mere allegations of their pleadings or upon general allegations that issues of fact may exist. See *Bryant v. Commonwealth*

---

> Courts should generally decline to reconsider a previously decided issue unless one of the following circumstances exists: '(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice.' *Westside Mothers v. Olszewski,* 454 F.3d 532, 538 (6th Cir. 2006) (citing *Hanover Ins. Co. v. American Eng'g Co.,* 105 F.3d 306, 312 (6th Cir. 1997)).

*Norton Constr. Co. v. United States Army Corps of Eng'rs*, No. 1:03-cv-02257, 2006 U.S. Dist. LEXIS 88272, at *14-16 (N.D. Ohio Dec. 6, 2006).

*of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974).

All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the non-movant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is only genuine, however, if a reasonable jury could resolve the dispute and return a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

**B. Count Three: The Rehabilitation Act**

Both Plaintiff and the VA move for summary judgment on Count Three of Plaintiff's SAC, which asserts disability discrimination and retaliation pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a). (R. 51, R. 52). The threshold issue is whether Count Three is properly before the Court. For the reasons set forth herein, the undersigned recommends finding that it is not, and the Defendant's summary judgment should be granted.

The Rehabilitation Act is the exclusive means for federal employees to assert disability discrimination in federal court. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (citing *Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004)); *Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998). Pursuant to the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). To establish a Rehabilitation Act violation, Plaintiff

must show "(1) that he is disabled, (2) that he is otherwise qualified for the job, with or without reasonable accommodation, (3) that he suffered an adverse employment action, (4) that his employer knew or had reason to know of his disability, and (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open" or that a similarly situated, non-protected employee was treated more favorably. *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007).

Before seeking judicial remedies, however, a plaintiff is required to exhaust his administrative remedies. *Ryan v. McDonald*, 191 F. Supp. 3d 729, 740 (N.D. Ohio 2016) (Polster, J.) (citing *Smith v. United States Postal Serv.*, 742 F.2d 257, 261-62 (6th Cir. 1984)). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Lybarger v. Gates*, No. 1:10-CV- 0373, 2012 WL 1095915, at * 7 (N.D. Ohio March 30, 2012) (citing 42 U.S.C. 2000e-5(f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). "This rule serves the dual purpose of giving the employer information concerning the conduct about which an employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Lybarger*, 2012 WL 1095915, at * 7 (citing *Alexander*, 415 U.S. at 44). "Allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role." *Id.*

An exception to this rule exists for charges that could be within the "expected scope of the investigation" (ESOI Test) and, therefore, "reasonably expected to grow out of the EEOC charge" of discrimination. *Weigel v. Baptist Hospital of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002); *see also Delisle v. Brimfield Twp. Police Dept.*, 94 F. App'x. 247, 253 (6th Cir. 2004); *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (quoting *Weigel*, 302 F.3d at 380); *Davis v.*

*Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998); *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 546 (6th Cir. 1991). An uncharged claim may also be considered exhausted if the agency discovers evidence of the discrimination underlying the claim during their investigation. *Davis*, 157 F.3d at 463. The "ESOI Test…allows a plaintiff to raise a new legal claim in court even if he did not include that theory in the EEOC charge, as long as that claim is reasonably expected to fall within the scope of the original EEOC investigation." *Watson v. Ohio Dep't of Rehab. & Correction*, 690 F. App'x 885, 890 (6th Cir. 2017). However, the "filing of a subsequent EEO charge cuts off a prior charge's ESOI Test at the date of the filing of the prior EEOC charge[.]" *Id.* (*citing Bacon v. Honda of America Mfg., Inc.*, 192 Fed. App'x 337, 341-342 (6th Cir. 2006)). "Consequently, if an aggrieved employee files a [ ] successive [ ] EEOC charge, then he must include in it all acts and claims that had occurred since the previous EEOC charge or else he waives them." *Id.*

The Court has ruled previously that the 2350 and 3805 Claims were exhausted and properly before the Court through the SAC, but the 0202 and 2480 Claims were not. (R. 30). Thus, the threshold question here is not whether Plaintiff's EEOC claims have been exhausted, but whether the exhausted claims *that are properly before the Court* included disability discrimination charges, or whether the alleged violation of the Rehabilitation Act in Count Three falls within the reasonable scope of the EEOC's investigation into the 2350 Claim and the 3805 Claim.

The undersigned concludes, as explained herein, that Plaintiff's Rehabilitation Act allegations in Count Three of the SAC do not stem from either the 3805 Claim[4] or the 2350 Claim and are not properly before the Court. Consequently, it is recommended the Court DENY

[4] Plaintiff does not assert or otherwise argue that the 3805 Claim included allegations of disability discrimination.

Plaintiff's motion for partial summary judgment on Count Three. The undersigned further recommends that the Court GRANT the VA's motion for summary judgment on Count Three.

The VA's motion for summary judgement as to Counts One and Two will be addressed on the merits in Section C, below.

**1. The 2350 Claim and the 0202 Claim**

In his motion for partial summary judgment, Plaintiff contends that he is entitled to judgment as a matter of law on his claim for disability discrimination in the form of a failure to accommodate his disability under VA policy and federal law. (R. 51, PageID# 617). He further contends that he is entitled to judgment on his retaliation claim for failure to accommodate his disability and unreasonable delay in processing his requests for accommodation. (R. 51, PageID# 631). He contends that Count Three is properly before the Court, whereas the VA continues to assert the opposite. (R. 52).

In support of his argument supporting Count Three, Plaintiff merely points to the Court's prior order that he "'may also include claims based on exhausted EEO[C] Complaint No. 200h-005-2018102350, filed May 15, 2018 (R.16-6, Page ID #: 179-180[ ) ], i.e., hostile work environment, based on retaliation, and disability discrimination.' (R. 30)." (R. 51, PageID# 617). But Plaintiff must still show that the 2350 Claim asserted disability related claims or that such would reasonably have been expected to be part of the EEOC investigation into the 2350 Claim. Moreover, the Court's underlying rulings have explained that whether the 2350 Claim included a disability discrimination claim was an issue better determined on a full record. (R. 36, PageID# 418).

Plaintiff makes no effort to establish that his Count Three claims were included in or arise

from his exhausted EEOC claims. (R. 51). Plaintiff only addresses the issue in his reply to the VA's contention that the 2350 Claim did not include a disability discrimination charge, and that Plaintiff attempts to conflate the claims from the later filed 0202 Claim with the 2350 Claim. (R 55, PageID# 1237; R. 56, PageID# 1277).

Plaintiff's reply does not argue that the 2350 Claim *independently* supports the allegations in Count Three. (R. 57). Instead, his explanations rely on combining *both* the 2350 and 0202 Claims. (R. 57, PageID# 1315). Plaintiff states that "there is no dispute that as early as February 2018, Plaintiff made repeated oral and written requests to Defendant to reasonably accommodate his ongoing back disability while at work." *Id*. at 1314. Plaintiff continues that thereafter he "filed EEOC complaints on May 15, 2018 [the 2350 Claim] and again on November 19, 2018 [the 0202 Claim] alleging disability discrimination and retaliation because Defendant failed to properly process those requests in accordance to Defendant's own written policy and law." (R. 57, PageID# 1314). Plaintiff's argument seeks to conflate these two separate and distinct EEOC claims to shoehorn unrelated and unexhausted disability claims into the 2350 Claim, which as explained herein did not assert any disability-related claims.

In addition, Plaintiff broadly states that the 2350 and the 0202 Claims "dealt with Plaintiff's health issues while at work, and the refusal or inability of Defendant to promptly address his back injury that was well documented and in possession of Defendant. Plaintiff filed these complaints because Defendant failed or refused to properly address his request for an accommodation pursuant to Defendants' well-established policies for processing a federal employee's reasonable request for an accommodation." (R. 56, PageID# 1283).

Plaintiff, however, offers no evidence for the Court to conclude the same. Rather, it is apparent from the record that the 2350 Claim alleged retaliation from January 13, 2016 to July 10,

2018, for prior EEOC activity, and when Plaintiff was marked Absent Without Leave on January 22, 2018. (R. 55-2, PageID# 786). Whereas the 0202 Claim alleged disability discrimination and reprisal when Plaintiff was marked AWOL for four days in September 2018. (R. 55-3).

Plaintiff also contends that both the 2350 and the 0202 Claims are properly before the Court because the EEOC did not issue a final action within 180 days of his filing of the 0202 and 2350 Claims. Plaintiff's brief provides the following:

> Plaintiff rightfully filed his Second Amended Complaint that included claims for disability discrimination and retaliation (reprisal). Both of these claims have been approved by this Court. As of January 31, 2020, Plaintiff was under no legal obligation after 180 days to ask the EEOC for permission to litigate these claims in district court, or wait for the final agency of the EEOC regarding Plaintiff's original EEO claims filed on May 15, 2018 and November 19, 2018. Once Plaintiff filed these claims in this action, the EEOC no longer had any jurisdiction to process or litigate Plaintiff's claims. As EEOC Administrative Judge Francis Polito correctly acknowledged and stated, "The complainant has exhausted administrative remedies in EEOC's federal sector system as it has been more than ***180 days*** since the filing of the complainant's administrative complaint." (See, *Leroy Thompson vs. Robert L Wilkie, Secretary, Department of Veterans Affairs*, EEOC No. 530-2019-00324X, Agency No. 200H-0005-2018102350) (Emphasis added).

(R. 56, PageID# 1283-84). Plaintiff's contention is erroneous and rests upon a flawed assumption that he may amend his federal complaint any time, at will.

Plaintiff made this same argument in his August 5, 2019 motion for leave to file his SAC. (R. 26, PageID# 267-68). The Court explained then that Plaintiff's assertion that he could "amend his complaint in this court 'at any time prior to the conclusion of the investigation to include issues or claims like or related to those in the complaint[,]' (R. 26, PageID# 266, quoting 29 CFR § 1614.106(d))" was misplaced because such EEOC regulations do not control the procedural requirements for proceedings in federal court. (R. 30, PageID# 331).

The Court also explained that Plaintiff offered no meaningful basis for the Court to overlook the fact that his motion for leave to file the SAC was filed seven months after the deadline

to amend the pleadings and a year after the initial complaint. (R. 30, PageID# 331). However, the Court concluded that the Plaintiff's FAC, which he filed on January 14, 2019 (R. 12), attempted to bring claims raised in the 2350 Claim and, therefore, granted limited leave to file a limited SAC to include claims exhausted in the 2350 Claim. (R. 30).

Plaintiff, however, cannot argue that his FAC properly attempted to raise issues set forth in the 0202 Claim. According to Plaintiff's argument that his claims were exhausted after 180 days of EEOC inaction, the 2350 Claim filed with the EEOC on May 15, 2018, was exhausted on or about November 11, 2018. The 0202 Claim filed with the EEOC on November 19, 2018, would have been exhausted on or about May 19, 2019. (R. 26, PageID # 267; 26-2 PageID# 272). Plaintiff's FAC was filed four months earlier, on January 14, 2019. (R. 12). Therefore the 2350 Claim was exhausted at the filing of the FAC, while the 0202 Claim was not. Any references to disability discrimination in his FAC could only have been based on the 2350 Claim, although that does not demonstrate that the 2350 Claim actually included disability claims.

Plaintiff's attempt to effectively amend his complaint without leave to include claims raised in the 0202 Claim is without merit. Because the 0202 Claim is not properly before this Court, Plaintiff must establish that the 2350 Claim asserted a disability discrimination claim, or that it could be expected to grow out of, or was discovered during the EEOC investigation, to survive summary judgment.

**2. The 2350 Claim and Count Three**

Plaintiff fails to argue, let alone support an argument with record evidence, that the 2350 Claim provides an independent basis for his Count Three claims. Fed.R.Civ.P 56(c)(1). In its opposition, the VA asserts that Plaintiff may not raise claims of disability discrimination because

they were not included in either the 3805 or 2350 Claims. (R. 55, PageID# 1236). Further, the VA raised this issue in its motion for summary judgment (R. 52) and Plaintiff offered virtually the same response in opposition as he did in his motion for summary judgment. (R. 51, 57).

The VA points the Court to evidence underlying the 2350 Claim to establish that the allegations in Count Three do not stem from the 2350 Claim. (R. 59-1, PageID# 1417). Plaintiff made his initial informal complaint regarding the incidents ultimately alleged in the 2350 Claim on February 7, 2018. (R. 59-2, PageID# 1434). On February 14, 2018, a counselor with the VA's Office of Resolution Management interviewed Plaintiff regarding his claims. (*Id.*). Plaintiff's claims were described as follows:

> Claim 1: Harassment/Hostile Work Environment (Non-Sexual).
>
> The Aggrieved Party (AP) alleged that he has been subjected to a hostile work environment. AP alleged the following:
> On February 14, 2018, the AP stated that he was advised by David Spernoga, Supervisor that he had to report to him when he leaves and comes back to the front desk.
> On February 6, 2018, AP received a Report of Contact (ROC). In the ROC, AP was accused of violating the time and attendance policy.
> On January 22, 2018, AP was marked AWOL. On numerous occasions, the AP stated that RMO Gaj has walked by him and stares him down.
> In October 2017, the AP stated that he was asked to clean a room that was trashed by someone. AP stated that management knew he had a physical condition that caused him pain with bending and kneeling and was still asked to clean a trashed room. AP subsequently initiated this EEO complaint.
> AP named Steven Gaj, Facility ISO, as the Responding Management Official (RMO). Although the AP's supervisor is mentioned, he is not asserting the supervisor into this complaint.
> Counselor Note: AP asserts reprisal as a basis due to his prior EEO complaint. In this complaint, AP named RMO Gaj.
> …
> Claim 2: Time and Attendance
> The Aggrieved Party (AP) stated that on January 22, 2018, he was marked Absent Without Official Leave (AWOL). AP stated that he spoke with is immediate supervisor, David Spernoga, prior to this date and told him of his plans for the date in question. AP feels he is not an essential employee as he is on light duty. AP stated that when he asked RMO Spernoga about their discussion, RMO Spernoga

> declined their conversation therefore the AP receiving this charge. AP feels he is being retaliated against because of his prior EEO complaints.

(R. 59-2, PageID# 1435-36). Therefore, Plaintiff's informal complaint alleged reprisal for previous EEO claims. There was no resolution at the conclusion of informal counseling and Plaintiff was provided with the Notice of Right to File. (R. 59-2, PageID# 1437).

In his formal complaint, Plaintiff asserted that the basis for the 2350 Claim was "Reprisal." (R. 55-1). The facts as alleged in the 2350 Claim demonstrate that it was limited to harassment and hostile work environment based on prior EEO activity. Plaintiff provided the following explanation:

> On February 6, 2018, [Aggrieved Party] AP received a Report of Contact. Accused of violating the time and attendance policy during the government furlough. Talk to my supervisor before the furlough, sent [sic] I was on restricted duty did not think or was told that I needed to report. Ask to see policy on furloughs done [sic] was given.
>
> On February 14, 2018, the AP stated that he was advised by David Spernoga, Supervisor that he had to report to him when he leaves and comes back to the front desk, even if going to restroom or breaks and lunch. I am the only staff member who had to report.
>
> Since 2008, have not [sic] any formal training or any professional opportunities. Supervisor and I will started [sic] doing training for new tasks he would like to take on put after a few hours it would always stop, never a reason why.

(R. 55-1).

On July 10, 2018, the EEOC notified Plaintiff that it accepted the following for investigation and further processing as the 2350 Claim:

> Whether [Plaintiff] was discriminated against based on reprisal (prior EEOC activity) when from January 13, 2016, to the present he was subjected to a hostile work environment with respect to having to report when arriving and departing, false accusations, being given a Report of Contact, intimidation, being made to cleanup messes made by others, not being provided with training and professional development; and the following independently actionable Claim: When on January 22, 2018, [Plaintiff] was marked AWOL, even though he had made prior arrangements.

(R. 52-2, PageID# 786). The EEOC informed Plaintiff that if the accepted claim was improperly formulated, incomplete, or incorrect, he could notify the EEOC of his disagreement to be included in the file. (R. 55-2, PageID# 1244). There is no such notice in the evidence before the Court.

In his September 5, 2018 affidavit to the EEOC regarding the 2350 Claim, Plaintiff explained that "beginning in May 2014, I filed a formal complaint of discrimination based on religion and age discrimination with Steven Gaj as the RMO. Agency No 200H-00005-2014102480. Since that and every subsequent complaint, I have been met with a plethora of facially meritless Reports of Contacts and unwarranted disciplinary actions." (R. 52-4, PageID# 1038).

In addition, Plaintiff described claim one of the 2350 Claim as follows:

> On May 19, 2014, I filed a formal complaint of discrimination based on religion and age discrimination. Agency No. 200H-0005-2014102480.
> By January 2016, the retaliatory mistreatment had escalated into an unending series of false Reports of Contacts being given to me at the direction of Steven Gaj[.] These ROC are numerous and I will provide copies as illustrations.
> On February 14, 2018, I was advised by David Spernoga, Supervisor that he had to report to Gaj when I took restroom breaks.
> In October 2017, I was ordered by Joe Green to clean a room that was trashed by someone. See photograph attached. I stated that management knew I had a physical condition that caused me pain, I was on light-duty and could not remove the heavy objects. I was written up for it.
> In about February- March 2018 I was written up for "disrespectful conduct" and "failing to reply" to an email to Gaj.
> This allegation was false as I did respond to the email from my direct supervisor. During the same period, I was cited for "failing to work productively."

(R. 52-4, PageID# 1038-39). Plaintiff described claim two of the 2350 Claim as follows:

> The Senate adjourned Sunday without a deal on ending a partial government shutdown, leaving hundreds of thousands of federal workers to be furloughed on Monday as the shutdown enter its third day. The IT team was told to report for duty. Because of my protected activity, I was fearful of being in an environment in which the *only* staff on site would be under Gaj's direct supervision. I was also under medical supervision. I requested leave (which was protected activity).

(R. 52-4, PageID# 1040). Despite mentioning medical supervision, Plaintiff went on to explain that he believed the AWOL citation was based on reprisal for his former EEO activity. (*Id.*). Further, he stated that "I was not cited for AWOL until my lawyer and I met with Gaj and agency counsel during a mediation for my first EEO administrative complaint. Each and every one of my complaints are still pending, by the way." (*Id.*). Plaintiff affirmed that he believed that he was marked AWOL due to reprisal for having filed previous EEO claims. (R. 52-4, PageID# 1041).

Plaintiff does not dispute these facts. Moreover, Plaintiff has clearly explained that the harassment/hostile work environment in both claims of the 2350 Claim was based on reprisal for prior EEO claims. In fact, he summarized his position as follows: "I'm being harass[ed]. I'm working in a hostile environment, so I file a EEO complaint and so he (Mr. Gaj) retaliates." (R. 52-4, PageID# 1041).

More recently, during his November 2, 2020 deposition, Plaintiff again confirmed that the basis for the 2350 Claim was "reprisal for prior EEO activity[.]" (R. 59-6, PageID# 1516). It is clear from both the face of the 2350 Claim and the evidence related to the investigation that Plaintiff asserted reprisal from his previous EEO activity—not in association with alleged disability discrimination.

Conversely, Count Three of the SAC alleges disability discrimination and retaliation in the form of a failure to accommodate due to pursuing a disability claim. Plaintiff asserts that: 1) he was disabled due to a back injury (R. 31, ¶130); 2) the VA was aware of his disability by way of his application for reasonable accommodations (R. 31, ¶131); 3) he was otherwise qualified for his job (R. 31, ¶132); 4) he requested an accommodation (R. 31, ¶132-137); 5) "[a]s a direct result of his disability and his multiple requests for reasonable accommodations, Thompson has suffered

adverse employment actions (denial of reasonable accommodations, increased workplace surveillance, constant supervisory monitoring, unchecked retaliatory harassment, reports of contact, denial of job transfer/reassignment, denial of advanced sick leave, written admonishments, frequent written reprimands, suspensions and forced retirement) from Defendant VA subsequent to his medical diagnosis and treatment for his disability, and therefore, Thompson began to be treated differently and more disparagingly than other employees at the VA without a disability" (R. 31, ¶139); and 6) he was "unjustly and harshly scrutinized as a result of his disability" and singled out and disciplined by the VA while other "employees were not for identical or similar infractions." (R. 31, ¶141).

In addition, Plaintiff's SAC attempts to recast the 2350 Claim into a disability claim that was not alleged therein. For example, the SAC provides:

> Subsequent to EEO counseling, on May 15, 2018, Thompson filed a third formal EEO complaint with the VA. In that complaint (Agency No. 200H-0005-2018102350), Thompson alleged that he was falsely accused of being absent from work during a government furlough and marked AWOL without prior approval sick leave; being the only the IT Specialist in OI&T to be frequently monitored due to his disability; subjected to increased scrutiny and required to hourly report to his immediate supervisor when he leaves his desk and comes back from the front desk, even if he is going to the restroom; taking work breaks or going to lunch; and, the lack of formal training and professional development.

(R. 31, ¶67). The undisputed evidence does not support Plaintiff's recharacterization of the 2350 Claim and his contention that it asserted disability-related claims, alleged that he was being monitored due to his disability, or even that any of the other asserted issues were due to a disability.

Accordingly, the allegations in Count Three of Plaintiff's SAC do not stem from the 2350 Claim and are not properly before this Court. Consequently, the undersigned recommends DENYING Plaintiff's motion for summary judgment in full (R. 51) and GRANTING the VA's motion for summary judgment on Count Three. (R. 52).

**C. Title VII: Counts One and Two**

The VA moves for summary judgment on Counts One and Two of Plaintiff's SAC. (R. 52, PageID# 732-746) Count One of the SAC asserts race discrimination and retaliation and Count Two asserts hostile work environment, in violation of Title VII. (R. 31, PageID# 355-360).

In the absence of direct evidence of discrimination in violation of Title VII, such as here, Courts apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Pursuant to the *McDonnell Douglas* analysis, Plaintiff must establish a prima facie case through circumstantial evidence. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009).

If a plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. Once the defendant has done so, the burden of production then returns to the plaintiff to show by a preponderance of the evidence that the defendant's explanation is pretextual. *Id.* at 803-04. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citations omitted).

Throughout Plaintiff's briefing, he refers to incidents and claims that are not properly before the Court. The only claims before the Court for discussion are the 3805 Claim and the subsequently filed 2350 Claim. The 2350 Claim was filed on May 15, 2018. To the extent that Plaintiff argues, or otherwise assumes, that acts that occurred after May 15, 2018, could be included in the expected scope of the investigation (ESOI) of either the 3805 or the 2350 Claims, he is mistaken. Plaintiff filed the 0202 Claim on November 19, 2018. The "filing of a subsequent EEO charge cuts off a prior charge's ESOI Test at the date of the filing of the prior EEOC

charge[.]" *Watson*, 690 F. App'x at 890. Therefore, incidents and potential claims that were filed after May 15, 2018, are not properly before the Court as stemming from either the 3805 Claim or the 2350 Claim.

### 1. Count One - Race Discrimination and Retaliation

In Count One, Plaintiff contends that the VA discriminated against him due to his race, and when he complained about the discrimination the VA retaliated against him in violation of Title VII. (R. 31, PageID# 355). The VA asserts that Plaintiff has failed to make a prima facie showing, and there are no genuine issues of material facts thereby rendering judgment as a matter of law appropriate.

#### a) Prima Facie Case - Discrimination

To establish a prima facie case for racial discrimination, Plaintiff must show that: (1) he is a member of a protected class; (2) he was subject to an adverse employment action; (3) that he was qualified for the position; and (4) that he was treated less favorably than similarly situated non-protected employees. *Vincent v. Brewer Co*., 514 F.3d 489, 494 (6th Cir. 2007).

The VA concedes that Plaintiff is a member of a protected class but asserts he cannot establish that he has suffered an adverse employment action or that he was treated less favorably than similarly situated non-protected employees. (R. 52-1, PageID# 731).[5] Plaintiff disputes such arguments and contends that he has established a prima facie of race discrimination.[6] (R. 57,

---

[5] Defendant does not address the third prong and, therefore, does not challenge that Plaintiff was qualified for his position.

[6] As pled, Count One is limited to race discrimination and retaliation, and Count Two is limited to hostile work environment based on race. (R. 31, ¶120). Plaintiff's Opposition to Defendant's Motion for Summary Judgment suggests perplexingly that he also raised a distinct claim of disability discrimination under the Rehabilitation Act in Counts One and Two of the SAC. (R. 57, PageID# 1324). First, to credit such an assertion would be error as it would require redrafting the

PageID# 1325).

**(1) Adverse Action**

The VA asserts that Plaintiff did not suffer an adverse employment action because he cannot point to any disciplinary actions that resulted in tangible job consequences. (R. 52-1, PageID # 732-33).

An adverse employment action is "a materially adverse change in the terms and conditions of [a plaintiff's] employment." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc)). The action must "constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Baxter Healthcare*, 533 F.3d at 402 (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

The actions alleged in the 3805 Claim include an August 19, 2015 Admonishment issued by Bennett, and the following Reports of Contact issued by Bennett and Gaj between June 3, 2015 and July 1, 2015:

> an accusation that he left a mandatory staff meeting, rude treatment of a coworker, failing to timely repair a computer, refusing to repair a printer, accessing a room without authorization, stating to another employee that cleaning the printers was not his responsibility, frequently interrupting another employee[,] and telling that employee it was easier to change the printer name and failing to respond to a customer's request to determine the status a help ticket.

(R. 52-2, PageID# 762). The 2350 Claim involved the following alleged adverse actions: "having

SAC. Second, to the extent Plaintiff attempts to weave unwritten disability discrimination issues into Count One and Two, such claims and arguments are not properly before the Court, based upon the reasoning addressing Count Three. Therefore, Counts One and Two are limited to discrimination, retaliation and hostile work environment based on race.

to report when arriving and departing, false accusations, being given a Report of Contact, intimidation, being made to cleanup messes made by others, not being provided with training and professional development, …. [and] on January 22, 2018, [Plaintiff] was marked AWOL, even though he had made prior arrangements." (R. 55-2, PageID# 1243).[7]

The VA asserts that Plaintiff cannot establish a genuine issue of material fact regarding a tangible employment consequence from any of the alleged acts. (R. 52.1, PageID# 733). The VA contends that as a matter of law, "de minimis" employment actions that are not materially adverse are not actionable and that an admonishment on its own, without evidence that it led to a materially adverse consequence, is not a materially adverse employment action. (R. 52-1, PageID# 732).

In support, the VA relies upon Plaintiff's October 20, 2020 discovery responses. *See* Fed.R.Civ.P. 56(c)(1)(A); R. 52-1, PageID# 733, citing R. 52-4. In Plaintiff's verified discovery responses, he could not identify any damages regarding the admonishment from August 19, 2015, because he could not specifically recall the admonishment. (R. 52-4, PageID# 933). Further, Plaintiff could not recall any specific employment opportunities missed as a result of being issued a Report of Contact and/or admonishment. (R. 52-4, PageID# 939).

In his opposition, Plaintiff does not directly address the VA's assertion that he could not point to evidence in the record to support a contention that he suffered a material adverse consequence, nor does he address the evidence that the VA cited. Instead, Plaintiff summarily states that he has shown he was subjected to an adverse employment action, including:

> suspension without pay; increased daily work surveillance, scrutiny and supervisory monitoring; requiring him to get permission from a supervisor to use the restroom, or when he left his temporary assignment to a new workstation at the

[7] Plaintiff's list of alleged adverse actions throughout his Complaint and summary judgment briefing encompasses incidents that occurred after the 2350 Claim date of May 15, 2018, and accordingly are not before the Court for consideration. *Watson*, 690 F. App'x at 890.

> front reception of the department; denying him access to the Selective Service Office when he requested oral and written accommodations; disciplining him for taking periodic days off from work (with or without pay) for medical care and treatment for his back disability; denying him the good faith interactive process under VA-RA policy; disciplining him for falsely accusing him of violating Defendant's sick leave policy; falsely accusing him of disrespecting an employee while performing his job duties; and, proposing a removal of his job or termination of his job after failing to properly and timely process his multiple oral and written requests for an accommodation of his disability in 2018 and 2019.

(R. 57, PageID# 1325, citing Plaintiff's Affidavit, R. 57-1, at ¶50). Plaintiff relies solely on his own affidavit to support this assertion. Plaintiff's affidavit is dated November 30, 2020, a little over a month after he verified his responses to the VA's discovery requests. (R. 57-1, PageID# 1339). In his October 20, 2020 verified discovery responses, Plaintiff could not identify any damages resulting from an ROC and/or admonishment, nor could he recall any missed employment opportunities. (R. 52-4, PageID# 939). Plaintiff cannot create an issue of fact by contradicting himself via an affidavit. *Cap. Telecom Holdings II, LLC v. Grove City, Ohio*, 403 F. Supp. 3d 643, 649 (S.D. Ohio 2019) ("[S]elf-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment."); *see also Sampson v. City of Cleveland*, 2021 U.S. Dist. LEXIS 92067 (N.D. Ohio, May 14, 2021). Plaintiff needed to go beyond the pleadings to demonstrate "specific facts showing that there is a genuine issue for trial[.]" *Celotex*, 477 U.S. at 324.

Further, to the extent that Plaintiff cites to acts that occurred in 2018 and 2019 regarding his Rehabilitation Act claim, these issues are not properly before the Court. Plaintiff's issues and concerns regarding accommodations, FMLA leave, the interactive process and other disability related issues were first raised in the 0202 Claim. As noted above, Plaintiff may not rely on issues and/or claims that were not presented, investigated, and/or reasonably expected to grow out of the 2350 and 3805 Claims. (R. 59-1, PageID# 1421).

Considering the evidence in the light most favorable to the nonmovant, Plaintiff has failed to point to specific facts to show there is a genuine issue of material fact as to whether he suffered an adverse action based on race or as retaliation for prior EEOC activity. Therefore, Plaintiff cannot establish a prima facie case of Title VII discrimination based on race and/or prior EEOC activity.

**(2) Similarly Situated Employees**

Assuming Plaintiff could establish an adverse act for purposes of the prima facie case, the VA contends that he cannot demonstrate that he was treated differently than similarly situated employees not in the protected class. (R. 52-1, PageID# 733). The Court agrees.

Plaintiff must show a comparable, non-protected employee was similarly situated to him in all relevant aspects yet treated more favorably by the VA. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610-11 (6th Cir. 2002)). "[T]he employee with whom Plaintiff seeks to compare himself …must be similar in 'all of the relevant aspects'" to be considered similarly situated. *Id*. (quoting *Ercegovich v. Goodyear Tire and Rubber Co.,* 154 F.3d 344 (6th Cir. 1998)). The comparison does not have to be exact, "but should instead seek relevant similarity." *Id*. (quoting *Perry v. McGinnis*, 209 Fed 3d 597 (6th Dist. 2000)). The individual should have "dealt with the same supervisor, been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992) (citations omitted).

Here, the VA relies upon Plaintiff's discovery responses to support its assertion that Plaintiff has no evidence that similarly situated employees not in the protected class were treated more favorably. (R. 52-1, PageID# 733). When asked to identify the employees Plaintiff claimed

were similarly situated, Plaintiff responded that he "does not specifically recall the names of his former co-workers who reported to Bennet and/or Gaj at this time." (R. 52-4, PageID# 938). The VA further points to Plaintiff's testimony before the EEO wherein he was asked about similarly situated individuals and Plaintiff did not identify any specific person. (R. 52-4, PageID# 986). For example, Plaintiff was questioned about the August 19, 2015 admonishment, wherein he was admonished for failing to execute his duties. (R. 52-4, PageID# 989). Plaintiff stated that he had no knowledge of any other employee who engaged in the same conduct that he did and did not get admonished. (*Id.*).

In opposition, Plaintiff responds by citing to paragraphs 51 to 53 of his affidavit. But upon reviewing his assertions, it is apparent that Plaintiff has failed to create a material issue of fact that any similarly situated employees outside of the protected class were treated more favorably. (R. 57, PageID# 1325). He stated:

> 51. During the time period from February, 2018 through October, 2019, my entire work environment became in increasingly retaliatory and hostile towards me on a daily basis when I requested accommodations for my back disability.
> 52. None of my co-workers in my department were subjected to the same workplace scrutiny and disciplinary actions during the time period from February 2018 through October 2019.
> 53. On an annual basis IT Specialists, including myself, are even required to sign a Telework/Work Agreement at the VA. That agreement clearly contemplates employees, with or without a disability, with more flexible work hours and schedules. I know for a fact that the following employees have been approved by the VA to work from home (offsite) under the VA Telelwork policy: Juan Ramirez, Don Newbill, Ira Miller, Joseph Green, Sam Moton, Richard Bottaro, Carolyn Asberry, David Spernoga, Tom Brown, and the late Randy Dawson. Indeed, since being assigned to laptop duty from my assigned work station, I daily repair the laptops of numerous federal governmental employees, who are currently working from home or off-site under the VA-RA Telework policy.

(R. 51-1, PageID# 642).

Setting aside the fact that these paragraphs are geared toward the 0202 Claim,[8] which is not an actionable claim before this Court, Plaintiff's list of names falls well short of establishing that these individuals were similarly situated to him in all material respects. Plaintiff offers no evidence to show, for example, the race of these individuals, their employment position and responsibilities, that they "dealt with the same supervisor, been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d 583 (6th Cir. 1992). Plaintiff has failed to establish that there is a genuine issue of material fact regarding his prima facie burden to point to similarly situated individuals.

**(3) Legitimate Non-Discriminatory Reason Not Pretextual**

The VA also asserts that, even if Plaintiff could satisfy his prima facie burden of racial discrimination, Plaintiff cannot establish that the VA's legitimate non-discriminatory reasons for its actions were pretextual. (R. 52-1, PageID# 734); *McDonnel Douglas*, 411 U.S. at 802. Specifically, the VA states that "the Admonishment and AWOL were issued to enforce VAMC policies" such as the Employee Code of Conduct and disciplinary policy. (R. 52-1, PageID# 734 (describing circumstances surrounding Thompson's supervisor's decisions to issue an Admonishment and AWOL pursuant to such VA policies). The VA continues that "An employer has a legitimate cause to discipline or terminate an employee who violates the employer's expressed policies." *Id.* (citing *Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013);

[8] Plaintiff's Rehabilitation Act claims are not properly before this Court. Accordingly, his statements that none of his coworkers were subject to the same scrutiny as him from February 2018 through October 2019 and that other employees were approved to work from home "with or without a disability" are not relevant here because these issues stem from the 0202 Claim, not the 2350 Claim filed on May 15, 2018.

*Russell v. Univ. of Toledo*, 537 F. 3d 596, 604 (6th Cir. 2008); *Smith v. Fed. Express Corp.*, No. 19-5621, 2020WL3088098, at *3 (6th Cir. June 2, 2020); *Lloyd v. Greater Cleveland Reg'l Trans. Auth.*, No. 1:18CV01557, 2020WL5077009, at *9 (N.D. Ohio Aug. 27, 2020)). Enforcement of an Employee Code of Conduct and attendance policy could constitute legitimate non-discriminatory reasons.

Pursuant to the *McDonnell Douglas* test, upon a showing of a legitimate non-discriminatory reason, the burden shifts to Plaintiff to establish that the proffered reason is pretextual: meaning that it has 1) no basis in fact, 2) was not the VA's actual motivation, or 3) is insufficient to explain the VA's actions. *Martinez v. Cracker Barrel Old Country Store*, 703 F.3d 911, 915 (6th Cir. 2013). Plaintiff does not address this argument, let alone provide a basis for the Court to find that the VA's non-discriminatory reasons are pretextual. Fed.R.Civ. P. 56 (c)(1).

Consequently, the undersigned recommends that Count GRANT the VA's motion for summary judgment on the portion of Plaintiff's Count One asserting racial discrimination.

**b) Prima Facie Case - Retaliation**

Plaintiff also asserts a retaliation claim in Count One. (R. 31, PageID# 355). Plaintiff claims that the VA retaliated against him for filling EEO and EEOC complaints, or verbally complaining to VA management about discriminatory and retaliatory practices. (R. 31, ¶104).

To state a prima facie case of retaliation, Plaintiff must show that: "(1) []he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment[[9]] by a supervisor; and (4) there was a

[9] The parties do not argue this alternative approach to the third prong of the prima facie case of

causal connection between the protected activity and the adverse employment action or harassment." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). The VA concedes that Plaintiff can establish the first two prongs of his prima facie case but argues that Plaintiff cannot satisfy the third and fourth prongs because he cannot establish that he sustained an adverse action and cannot prove causation. (R. 52-1, PageID# 738-42).

**(1) Adverse Action**

An adverse employment action in the retaliation context is one "that would have been materially adverse to a reasonable employee[.]" *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006). Materially adverse "means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*

The pertinent actions before the Court are those asserted in the 2350 Claim and 3805 Claim, as fully set forth above in the discussion of Plaintiff's race discrimination claim. Plaintiff generally identifies various ROCs, an August 19, 2015 Admonishment, being marked AWOL on January 22, 2018, increased reporting, false accusations, being made to clean up after others, and not being provided with training. (R. 52-2, PageID# 762; R. 55-2, PageID# 1243).

The VA contends that these actions were not materially adverse actions that would dissuade a reasonable employee from engaging in EEO activity. (R. 52-1, PageID# 739). In opposition, Plaintiff generally relies on his own affidavit and Bennett's affidavit while restating the actions he

---

discriminatory retaliation. The parties dispute whether Plaintiff can establish an adverse action. In addition, the parties dispute whether Plaintiff was subject to a retaliatory hostile work environment as a separate claim, which the undersigned addresses below. Regardless of the method of attempting to establish this third prong, Plaintiff fails to make a sufficient showing to support causation, therefore failing to satisfy the prima facie case.

asserted in his SAC. Plaintiff also states without record citation that he was "subject to adverse employment actions as more detailed in Bennett's Affidavit, including unwarranted reports of contact and disciplinary actions; being 'singled out' by Gaj for mistreatment; being subjected to a hostile work environment at Cleveland VAMC OIT; and having his job description being fraudulently altered by Gaj to harm Thompson." (R. 57, PageID# 1329). He then lists the same summary of actions as he did when alleging an adverse action for race discrimination, again seeking to rely upon actions that allegedly occurred after he filed the 2350 Claim on May 15, 2018. (R. 57, PageID# 1329).

But Plaintiff once again fails to go beyond the pleadings to demonstrate "specific facts showing that there is a genuine issue for trial[.]" *Celotex*, 477 U.S. at 324. Even if Plaintiff's reiteration of the pleadings established an adverse action, Plaintiff fails to establish that these actions were caused by Plaintiff's protected act of pursuing previous EEOC claims.

**(2) Causation**

"Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 133 S. Ct. 2517, 2528 (2013). The VA asserts that Plaintiff cannot establish that but-for his EEOC activity, the VA would not have issued the ROCs, admonishments, AWOL determination, assigned him to retrieve computer equipment, declined training, or required him to report when leaving his desk area. The VA then points to a variety of supporting evidence to establish that it would have taken the same actions regardless of the EEOC activity. (R. 52-1, PageID# 740-42).

Plaintiff does not address these arguments or Defendant's evidence in his opposition, but instead offers a conclusory statement that "the combination of close temporary proximity,

heightened workplace scrutiny and increased surveillance raises an inference of a causal connection after filing a claim of discrimination and acts of retaliatory conduct." (R.57, PageID# 1330). Plaintiff fails to meaningfully address the Defendant's argument and supporting evidence, and fails to point to "specific facts showing that there is a genuine issue for trial" that but-for his prior EEOC activity, the VA would not have taken the alleged actions. *Celotex*, 477 U.S. at 324.

For these reasons, the undersigned recommends granting the VA's summary judgment as to Count One's retaliation claim.

**2. Count Two - Hostile Work Environment Based on Race and Retaliation**

Count Two of Plaintiff's SAC asserts a hostile work environment claim based on race and retaliation. (R. 32, PageID# 359). To establish a prima facie case of hostile work environment based on race, Plaintiff must show that: "(1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) that harassment was based on race; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment; and (5) the employer knew or should have known about the harassment and failed to take appropriate remedial action." *Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021) (citing *Khalaf v. Ford Motor Co*., 973 F.3d 469, 482 (6th Cir. 2020)).

To establish a prima face case of retaliatory hostile work environment, Plaintiff must show that he suffered "severe or pervasive retaliatory harassment by a supervisor." *Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 593 (6th Cir. 2007) (internal quotations omitted). The court considers the totality of the circumstances and relevant factors including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it interferes with the employee's performance. *Cleveland v. S. Disposal Waste Connections*, 491 F.

App'x 698, 707 (6th Cir. 2012) (citing *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). The conduct is judged by both an objective and subjective standard; "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997) (citations omitted).

The VA moves for summary judgment on Count Two of the SAC, asserting that Plaintiff's "claims (being given 'numerous ROCs,' receiving an admonishment, being told to report to his supervisor when he arrives and leaves his desk, receiving job assignment to move computers that was within his job description, and being marked AWOL for failing to report for work or when he did not have sufficient leave) simply do not rise to the level of severe and pervasive in accordance with the standards set forth by courts." (R. 52-1, PageID# 745). The VA further contends that Plaintiff cannot show that the alleged harassment was based on race or retaliation. (*Id.*).

Specifically, the VA notes that in his verified discovery regarding facts that supported his subjective belief that the acts alleged created a hostile work environment based on prior EEOC filings or race, Plaintiff pointed only to Bennett's affidavit and the SAC. (R. 52-1, PageID #745, see R. 52-4, PageID# 933-937). However, Bennett's affidavit was given during the investigation of the 3805 Claim filed in May of 2015, and Plaintiff offers no basis for the Court to conclude that Bennett, who in October 2015 left the VA facility where Plaintiff worked, would have any knowledge of the work environment thereafter. *Id*. Moreover, Bennett's affidavit does not address Plaintiff's contention that he was subject to a hostile work environment based on race. *Id*. At his deposition, Plaintiff could not elaborate further, again referring generally to Bennett's affidavit and Paragraph Two of the SAC, which sets forth the law allowing him to sue pursuant to Title VII.

(R. 52-4, PageID# 853-54).

Although Plaintiff's opposition points to Bennett and his own affidavits (R. 57, PageID# 1327), he does not distinguish between his hostile environment claim based on race and his retaliatory hostile environment claim. He contends that "[t]here is evidence in the record based on Bennett's Affidavit that Thompson was subject to 'unwelcome harassment' by Gaj, a senior manager at Defendant. There also is evidence in the record that the harassment against Thompson affected a term, condition, or privilege of his employment on OI&T; and, as set forth in Defendant's own supervisor's Affidavit, Defendant knew or should have known about the harassment and failed to take any corrective action. Finally, Thompson maintains that similarly situated employees were not subjected to the action after before or after [sic] they were engaged in protected activity." (R. 57, PageID# 1327).

Plaintiff, however, makes no effort to establish or even argue that the alleged harassment was based on race. *Black,* 104 F.3d at 826. For that reason alone, Plaintiff has failed to create a material issue of fact and the VA's motion for summary judgment on this portion of Count Two should be granted.

Regarding retaliation, Plaintiff does not specifically point to any act to support his claim that he was being harassed as retaliation for his EEOC actions. He cites only to the following passage from Bennett's affidavit as alleged proof of a hostile work environment:

> There have been several attempts to correct the hostile work environment that has been perpetuated by Steven Gaj prior to my own tenure at VAMC Cleveland OIT as well as during. During this time, position descriptions have been fraudulently signed by Mr. Gaj to keep certain job descriptions (to include specifically Mr. Thompson) at a lower GS level than the national standard. Mr. Gaj has inexplicably reorganized the local Organizational Chart to block promotions at the detriment of workflow and against any existing organizational structure throughout any facility in the VA nationally. Mr. Gaj has been obscene and hostile verbally to employees from GS-5 to GS-13 including Mr. Thompson ... at times in large groups. Mr. Gaj

> has done so while invading persons' personal space in an attempt to intimidate. This has, in itself, created a discontent workforce and hostile work [environment]. While I can question some of Mr. Thompson's abilities as a technician, I do not question that he has been subject to a retaliatory and hostile work environment only exacerbated by his involvement in attempting to correct the problem via EEOC means within his rights.

(R. 57, PageID# 1327; R. 52-4, PageID# 1029-30).

The VA argues that while Bennett's affidavit describes a difficult working environment, it does not support a contention that Plaintiff was subjected to a hostile work environment based on retaliation for his prior EEOC complaints or his race. (R. 59-1, PageID# 1423, 1427 (noting further that many of the issues Plaintiff raised, such as ROCs, increased scrutiny, reporting issues, were actions taken by his first line and second line supervisors, not Gaj). Although Bennett's affidavit suggests that Gaj's actions were widespread and he was difficult to all employees, including Plaintiff, it does not demonstrate, other than as speculation, that such actions were directed to Plaintiff due to either retaliation or race. Without more, Plaintiff has not created a material issue of fact. To determine otherwise would require the Court to overlook the fact that "it is important to distinguish between harassment and discriminatory harassment, because Title VII prohibits only the latter." *Miller v. Rudd*, No. C2-97-317, 2001 U.S. Dist. LEXIS 25974, at *39 (S.D. Ohio Feb. 6, 2001). Further, "courts must keep in mind that Title VII is not intended to serve as a "general civility code[.]" *Miller v. Rudd*, No. C2-97-317, 2001 U.S. Dist. LEXIS 25974, at *38 (S.D. Ohio Feb. 6, 2001). Title VII does not create "a legal right to sue your employer because your supervisor is a jerk." *Bennet v. Potter*, No 08C 3587, 2009 U.S. Dist. LEXIS 107193, at *13-14 (N.D. Ill. Nov.17, 2009).

The alleged harassment here is only actionable if it was based on race or retaliation. *Id.* Plaintiff fails to point to "specific facts showing that there is a genuine issue for trial" that but-for

his prior EEOC activity or race, he would not have been subject to an alleged hostile work environment. *Celotex*, 477 U.S. at 324. Accordingly, the undersigned recommends the Court GRANT the VA's motion for summary judgment on Count Two of the SAC.

## IV. Conclusion

For the foregoing reasons, it is recommended that the Court DENY Plaintiff's Motion for Partial Summary Judgment (R. 51) and GRANT Defendant's Motion for Summary Judgment as to all three claims (R. 52).

*s/ David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: August 31, 2021

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the district Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019); *See also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**